THOMAS J. BROWN V. STATE OF NEBRASKA.

FILED JANUARY 24, 1911.    No. 16,825.

1. **Indictment: JOINDER: LARCENY AND RECEIVING STOLEN PROPERTY.** It is proper to unite two counts in an indictment, one charging larceny and another charging receiving stolen property, knowing it to be stolen. Criminal code, sec. 419.

2. **Criminal Law: TRIAL: REMARKS OF JUDGE.** It is the duty of the trial court to see that the jurors who try the case are not improperly prejudiced against the defendant by remarks made in their hearing either before or after they are called as jurors in the case. The judgment will not be reversed because of such remarks by the court unless the record clearly shows the language used and that it was in its nature prejudicial to the defendant.

3. **Larceny: INDICTMENT: SUFFICIENCY.** The indictment charged that the defendant at the time and place named "did then and there unlawfully, wilfully and feloniously steal, take and drive away seven cows of the value of $210, *and* the personal property of Thomas Byron." *Held,* That it sufficiently charged the ownership of the property stolen.

4. **Witnesses: IMPEACHMENT.** When a witness upon cross-examination admits making statements out of court inconsistent with her evidence upon the trial, it is erroneous to permit other witnesses to testify to the statements admitted by the witness, and to detail the circumstances under which the statements were made.

5. **Criminal Law: CROSS-EXAMINATION OF ACCUSED: REVIEW.** The judgment of the trial court will not be reversed for supposed errors in the cross-examination of the defendant unless the record shows that the court abused its discretion in permitting the cross-examination complained of, and that the circumstances were such that the defendant might probably be prejudiced thereby.

6. ——: **INSTRUCTIONS: REASONABLE DOUBT.** In a criminal prosecution, an instruction that, "The doubt which a juror is allowed to retain on his mind, and under which he should render his verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt. And a juror is not allowed to create sources or material of doubt by resorting to trivial or fanciful suppositions and re-

mote conjectures as to possible states of fact different from that established by the evidence"—has been disapproved by this court. Under the circumstances of this case it was prejudicially erroneous.

7. **Larceny:** Trial: Instructions. Certain instructions given by the court and refusals to instruct as requested are examined, and the rulings thereon found not to be prejudicially erroneous.

Error to the district court for Cherry county: James J. Harrington, Judge. *Reversed.*

*F. M. Walcott, A. M. Morrissey* and *Allen G. Fisher,* for plaintiff in error.

*Arthur F. Mullen, Attorney General,* and *George W. Ayres, contra.*

Sedgwick, J.

The defendant in the court below, who is plaintiff in error here, was convicted in the district court for Cherry county of the crime of stealing cattle and was sentenced to seven years in the penitentiary. He has brought the case here for review.

1. The first objection made by the defendant is that the court refused to require the prosecuting attorney to elect upon which count of the information he would proceed. One count of the information charged the defendant with stealing cattle and another count charged him with receiving the cattle, knowing that they had been stolen. Larceny and receiving stolen property are generally supposed to be so connected with the same transaction as not to require an election. 1 Bishop, New Criminal Procedure (4th ed.) sec. 457. Section 419 of our criminal code so provides. That section is as follows: "An indictment for larceny may contain also a count for obtaining the same property by false pretenses, or a count for embezzlement thereof, and for receiving or concealing the same property, knowing it to have been stolen; and the jury may convict of either offense, and may find all or any

of the persons indicted guilty of either of the offenses charged in the indictment." There was therefore no error in this ruling of the court.

2. It is also insisted in the briefs that immediately before this case was called for trial another prosecution for cattle stealing had been tried with a verdict of not guilty, and that the court had reprimanded the jury with remarks tending strongly to prejudice any defendant that might be put upon trial thereafter upon such a charge before members of the same jury or other jurors who had heard the court's language. There is no evidence in the record of any such transaction except certain affidavits of the defendant in which some alleged facts and some conclusions are recited. The facts set forth in this affidavit are not sufficient to support the argument now made upon this point. The record of the trial discloses no prejudice upon the part of the court against the defendant's case, and no such action on the part of the court will be admitted unless clearly shown by the proof.

3. In September or the first part of October, 1909, eight or nine head of cattle were missed from the range of one Carter, in Cherry county, the property of one Byron. The Carter range embraced several sections of land and contained something over 1,000 head of cattle, and among these cattle were 25 or 30 head belonging to the said Byron. In the month of March following, these missing cattle were seen by Mr. Carter in the inclosure of this defendant, about 25 or 30 miles from the range upon which they had been kept. It was thereupon arranged with the county attorney and the sheriff that a Mr. Hyde should go to the place of the defendant and attempt to buy the cattle in question, which was done. Mr. Hyde testified that at first the defendant, who had 25 or 30 head of cattle, declined to sell any, but afterwards informed Mr. Hyde that he had some cattle with "off brands" which he would sell. Mr. Hyde had represented to the defendant that he was trying to buy a few cattle for a friend of his in Keya Paha county, and finally succeeded in purchasing the cattle in

question, to be delivered at Arabia, some seven miles distant, and paid the defendant $5 on the contract. That same day the defendant drove these cattle to Arabia, and was there met by the sheriff with a warrant for his arrest for stealing the cattle. Another witness also testified that at about the time the cattle were missing from the range he had seen this defendant driving with a team and wagon toward the said range and not many miles distant therefrom. This the defendant denied. While the defendant was under arrest upon this charge he was taken to his home by the sheriff, and on the way he told the sheriff that he had bought these cattle from a stranger who represented that his name was Hammers, and also represented that he lived near Marsh Lake, which was some 25 or 30 miles distant; that the said Hammers was driving the cattle from his home to Valentine expecting to sell them to a specified dealer there. The defendant also stated to the sheriff that there was no other person present at the time of this purchase except the defendant's wife, who heard the contract. Afterwards, while the defendant was in jail, the county attorney procured a subpoena for the defendant's wife and caused her to be brought to town by the deputy sheriff and taken to his office. There he told her that her husband had stated that he had bought the cattle as above recited, and that she was present, and asked her if that was the fact, whereupon she answered him to the effect that she paid no attention to her husband's business. He then took her in the sheriff's office and in his presence repeated the same question, to which she made substantially the same answer. The defendant's wife was called as a witness in his behalf at the trial, and she testified that she was present when her husband bought the cattle from the stranger, stating the details substantially as her husband had stated them. In her cross-examination she was asked whether these questions had been put to her in the county attorney's office and in the sheriff's office, and after some hesitation she answered that they were, and she was fur-

ther asked if she answered that question to the attorney and sheriff that she did not know, and after again hesitating she answered that she did. She testified that she thought they were trying to take advantage of her and did not know what to answer them. This cross-examination was objected to, but the objections were overruled. Afterwards the county attorney and the sheriff both went upon the witness-stand and testified in detail to the questioning of this woman in the county attorney's and sheriff's offices, and to her answers, all substantially as she had testified to herself upon her cross-examination. This testimony was objected to for the reason, among other things, that it did not contradict in any respect the testimony of Mrs. Brown, since she had admitted fully upon the witness-stand the matters that the county attorney and sheriff were testifying to. This objection was overruled and the evidence admitted. This, we think, was error on the part of the trial court. When a witness is asked in cross-examination as to statements that she has made out of court for the purpose of laying the foundation for impeachment, and admits fully that she has made such statements, that is all that the cross-examination is entitled to. It is not competent to put another witness upon the stand to prove a statement which the witness has admitted in her cross-examination. In this case this manner of proceeding might be highly prejudicial to the defendant.

These cattle had been openly in the possession of the defendant for about six months. There was therefore little, if any, presumption of guilt from the possession of the stolen property. The defendant testified that he had the money in the house to pay for the cattle, $172. Upon cross-examination he gave the names of men apparently well known in the community from whom he had recently received the money for property he had sold them. These statements were not contradicted. If the defendant had taken these cattle from the range where they were kept by the owner, or if he had found them after they had escaped

from the range and had afterwards determined feloniously to convert them to his own use, he was guilty of the crime charged against him. There was no direct evidence that he had done either of these things. If, on the other hand, some stranger had taken them from the range where they were kept or had found them after they had escaped and had sold them to the defendant, and the defendant had bought them in good faith relying upon the representation of the party in possession of them, he was not guilty of either of the crimes charged. This was the real issue submitted to the jury, and the explanation of the defendant and his wife as to how the cattle came into the possession of the defendant was for the consideration of the jury. If the jury believed the evidence of the defendant and his wife upon this matter, they must of course find the defendant not guilty. When the county attorney and sheriff were allowed by the court to detail at large their conversation with the defendant's wife, after having brought her to the office by the unwarranted use of the process of the court, the jury must have considered the evidence of importance, and, since it could have had no other purpose than to discredit the testimony of the defendant's wife, it was at least probable that it was so regarded by the jury.

The tenth instruction given by the court is as follows: "The jury are instructed that, where a witness has intentionally testified falsely to a material fact or facts in the trial of a case, then the jury are at liberty to disregard the entire testimony of such witness, except in so far as the testimony of such witness may be corroborated by other substantial testimony or evidence." This would have been applicable to the testimony if the jury believed that the facts were as the testimony of the county attorney and the sheriff was intended to show that the defendant's wife admitted them to be. So far as we have observed, it has no relation to any other testimony in the case. This tends to make the error of receiving the testimony of the county attorney and sheriff in regard to her statements made to them the more dangerous.

4. When the cattle were found upon defendant's premises, other cattle with private brands were also found. Upon cross-examination the defendant was asked in regard to these other cattle. He answered that two of them he had had about a week and another about two weeks. This cross-examination was objected to, and it is now insisted that it was prejudically erroneous. It is intimated that another prosecution was pending in the same court for the theft of these other cattle, and that this cross-examination was for the purpose of discrediting the defendant by insinuating that he participated in that theft also. Such a course would be erroneous and prejudicial, but the record does not present the question. It does not show that there was any other prosecution pending, or that the defendant was in any way prejudiced by this cross-examination.

5. The court gave an instruction copied in part from the famous anarchist case which this court has so often disapproved. "The doubt which a juror is allowed to retain on his mind, and under which he should render his verdict of not guilty, must always be a reasonable one. A doubt produced by undue sensibility in the mind of any juror in view of the consequences of his verdict, is not a reasonable doubt. And a juror is not allowed to create sources or material of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of fact different from that established by the evidence." The instruction as given is disapproved, and under the circumstances in this case was prejudicial to the defendant.

6. Hearsay evidence was erroneously admitted as to the cattle having been seen at plaintiff's place; but, as all parties concede that the cattle were there at the time specified, this evidence could not have been prejudicial. The defendant requested the court to instruct the jury to the effect that, unless the "defendant, himself in person," went to the range or pasture where the cattle were and took and drove them away with the purpose and intention

to convert them to his own use, they must find him not guilty. The defendant sold these cattle as his own, and if at any time while they were in his possession he, knowing that they were the property of another who had never consented that the possession should be transferred to him, concluded to steal them, he would be guilty as charged. *Skidmore v. State*, 80 Neb. 698, is not in point. In that case the defendant was not actually or constructively present and participating at any time while the property was being converted. The defendant complains of the refusal of the court to instruct the jury as requested in the second instruction offered by his counsel. The substance of this request is given in better form in instructions 5 and 12, given by the court.

We do not find any error in the orders of the court complained of in regard to the plea in abatement filed by the defendant relating to the form of complaint before the examining magistrate or relating to the calling of the grand jury. The objection that the indictment contained the words "and the personal property of Thomas Byron," instead of the words "of the personal property of Thomas Byron," is immaterial.

The sentence of seven years under the evidence in this case seems severe, but, as there must be a new trial for the errors above indicated, we have refrained from discussing that question.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

FAWCETT, J., not sitting.