[Crim. No. 3276.   Second Appellate District, Division One.—February 14, 1940.]

THE PEOPLE, Respondent, v. JESUS R. FLORES, Appellant.

John A. Holland for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney and containing three counts appellant was accused of the crime of grand theft, allegedly committed by him in the unlawful taking of three automobiles on three separate occasions. Conviction of appellant on all three counts of the information followed a trial by jury. From the judgment pronounced thereon and from an order denying his motion for a new trial, appellant prosecutes this appeal.

For his first ground of appeal appellant charges error on the part of the trial court in denying his motion for a dismissal on the ground that he was not brought to trial within sixty days after the filing of the information. In this connection the record reflects the fact that the information was filed May 29, 1939. Trial of the cause was originally set for July 7th, upon which date it was continued to July 10th "because of the congested calendar". On the last-named date, when the case was called for trial it was again continued to July 28th, for the reason, as stated in the court's minutes, "because of the congested calendar". On July 28th the case was again continued by the court "because of the congested calendar", to July 31st, on which last-named date the cause proceeded to trial. Following the continuance on July 28th and late in the afternoon of that day appellant served and filed a written motion for dismissal, which motion was noticed for July 31st, upon which last-named date it was argued and by the court denied. It should be noted that no objection to the aforesaid continuances was made by appellant until after the court had made its order on July 28th setting the case for trial beyond the sixty-day limit. The failure of appellant to object at the time on July 28th when his trial was set for a time beyond the sixty-day limit is equivalent to a consent thereto upon his part. In fact, consent is presumed when a defendant fails to object at the time the cause is set for trial beyond such period. (*Ray* v. *Superior Court,* 208 Cal. 357, 358 [281 Pac. 391], and cases therein cited.) Further, under the circumstances here present, viz., congested condition of the court's calendar, coupled

with the fact that the defendant was brought to trial within three days after the expiration of the sixty-day period, we cannot say that appellant did not receive a speedy trial within the meaning of the Constitution when on the occasion of each of the continuances he made no objection thereto. As was said by this court in *People* v. *Romero,* 13 Cal. App. (2d) 667, 672 [57 Pac. (2d) 557]: "Time only will not always suffice as the sole basis for the determination of this question, but time, together with the surrounding circumstances, avoids an arbitrary standard and yet effectively preserves the safeguards created by the Constitution." (See, also, *People* v. *Brock,* 87 Cal. App. 601 [262 Pac. 369, 263 Pac. 544].)

■ Finally, appellant contends that the court erred in its rulings admitting certain evidence which it is claimed was hearsay. In this regard it appears that one Arthur Almerez was brought from San Quentin prison to testify in behalf of the People. The preliminary questions were as follows:

"Q. (By Mr. Blalock, Deputy District Attorney): Do you pronounce that Amerez? A. Yes, sir.

"Q. Mr. Amerez, you are now serving a term in the state prison at San Quentin, are you not? A. Yes, sir.

"Q. For automobile theft? A. Yes.

"Q. That was from Orange County, was it not? A. Yes.

"Q. When were you arrested in Orange County? A. May 7th.

"Q. May 7th? A. Yes.

"Q. Do you know this defendant, Jesus Flores? A. I don't know him good.

"Q. You know him, though, not whether you know him good or bad? A. Just saw him up North.

"Q. Whereabouts up North? A. In Ione.

"Q. In Ione? A. Yes.

"Q. When did you meet him? A. I didn't meet him. I seen him up there.

"Q. That is the state reformatory? A. Yes.

"Q. You saw him after that down here, didn't you? A. No, I haven't; well, right here in this room here.

"Q. But you never saw him at any time at any other place? A. No, sir."

Evidently the witness was expected to testify to facts involving the defendant in the offense with which defendant was charged, for the next question was as follows:

"Q. You know this officer, do you not? (Indicating Officer Stites.) A. I don't remember.

"Q. You don't remember seeing him, is that it? A. No, sir.

"Q. Do you know this officer, Mr. Patterson? A. I don't know.

"Q. Did you ever see him before? A. The only ones I seen are the ones in the Norwalk police station.

"Q. Did you ever see Mr. Patterson? A. Somebody like that, but I don't know."

Then followed an inquiry along the same lines with regard to several other officers, in connection with which the witness was asked if he did not make statements to these various officers which involved defendant and appellant in the offenses for which he, the defendant, was on trial. All of these inquiries by the district attorney relative to statements made to the officers were denied by the witness Almerez. Objections were duly made to all of the questions. The officers were thereafter sworn, and they testified to the statements which the witness Almerez had denied having made, respectively, such testimony being permitted on the theory that it was admissible for impeachment purposes. Objections were duly made to all of the foregoing testimony and a motion to strike was denied.

The lack of understanding among judges and lawyers with regard to a situation such as is here presented is quite common. The only proper and legal procedure in the circumstances is as follows: Upon being taken by surprise by such a witness, counsel may, upon announcing surprise, ask leave to examine the witness by leading questions, or in other words, to cross-examine the witness; but the asserted surprise must be genuine. Opposing counsel may dispute the alleged surprise, thereupon raising an incidental or collateral issue, which necessarily must be disposed of by the trial judge. Counsel disputing the alleged surprise may ask leave to cross-examine the witness in connection with such subject, and may offer other evidence relevant to the issue. Whether counsel who produced the witness will be permitted, under such circumstances, to cross-examine such a witness depends upon the determination of the issue thus presented.

The situation with which we are confronted, however, offers no such difficulties. "Surprise" was neither properly claimed

by the district attorney, nor disputed by defense counsel. There was no showing that the district attorney had ever talked with the witness Almerez or that the latter at any time led the prosecutor to believe that he would testify as counsel for the People declared he expected the witness would.

■ It requires no citation of authority for the statement that the party producing a witness cannot claim surprise and thereby *ipso facto* acquire a right to cross-examine such witness simply because the latter does not testify as expected. The examination of the witness proceeded apparently upon the theory that the district attorney could pursue the inquiry as a matter of right. Such is not the law. The witness Almerez' denial that he made the statements attributed to him left nothing more to be done in connection with the incident. ■ Although it is not the function of an appellate tribunal to publish a primer on the subject, it appears worth while to continue further, that if Almerez had admitted making the above-mentioned statements to the officers the proper inquiry following such an admission manifestly would be, were such statements the truth? If admitted by the witness to be the truth, such admission would be followed by questions serving to elicit from the witness the evidence directly. If, on the other hand, the witness admitted making such statements to the officers but denied the truth thereof or declared such statements to be false, the inquiry is at an end. Manifestly, nothing is to be gained by producing the officers to testify to statements admittedly made.

■ The evidence given by the officers purporting to impeach the witness Almerez, consisting as it did of statements made outside the presence of the defendant, was hearsay, and therefore inadmissible and highly prejudicial. The witness Almerez had given no testimony whatsoever, and there was therefore nothing in his testimony to refute, and the witness, having given no evidence, was not the proper subject of impeachment. All that the testimony of the officers accomplished or tended to accomplish, other than to prejudice the accused before the jury, was to prove whether Almerez was untruthful or whether the officers were untruthful, a fact wholly immaterial to the issue of guilt. Such methods are dangerous, to say the least, and cannot be accepted as valid on any basis, but to the contrary, should be emphatically condemned. However honest and well-intentioned the procedure may have been

in the instant case, it requires no stimulus to the imagination to contemplate that if permitted it would facilitate abuses that would be vicious in the extreme. The rulings of the trial court permitting such procedure in the instant case were therefore erroneous.

In disposing of this appeal we must now inquire into the effect of the errors of the trial court in the light of the provisions of section 4½ of article VI of the Constitution. Appellant took the witness stand and denied his guilt. True, a confession of guilt allegedly made by him to some of the officers was admitted in evidence, but appellant steadfastly insisted that the same was obtained by the use of force and violence, thereby raising an issue before the jury as to whether such confession was freely and voluntarily given and therefore admissible. The hearsay evidence to which we have heretofore adverted was of course not any evidence against appellant, but who can say to what extent it inspired a belief in the minds of the jurors that appellant's confession was not only a free and voluntary one but truthful as well? With this hearsay and incompetent evidence before them, containing as it did a narrative of statements allegedly made by the witness Almerez to police officers outside the presence of the defendant, and involving the defendant not only in the commission of the offenses with which he was charged but in many others for the commission of which he was not on trial, who can determine what inferences were drawn therefrom by the jury against defendant? ▉ It is the law, as stated in *People* v. *Degnen,* 70 Cal. App. 567 [234 Pac. 129], that when applying the provisions of section 4½ of article VI of the Constitution to an entire cause, we must direct a reversal when we are unable to say "whether appellant would or would not have been convicted but for the errors of the court". Can we say that the jury would have decided that the confession was to be considered as evidence if the minds of its members had not been impregnated with the incompetent and highly prejudicial evidence aforesaid? We certainly cannot say that. In *People* v. *Davis,* 210 Cal. 540, 546 [293 Pac. 32], the Supreme Court says: "Section 4½ of Article VI of the Constitution was not intended to mean that the mere fact that the evidence may legally be able to stand up under the weight of the judgment is sufficient reason in all cases for refusing to set aside the judgment." There seems to be a

growing tendency to permit incompetent and immaterial matters to be received in evidence notwithstanding well-grounded objections, apparently because of the hope that perchance it may finally be determined on appeal, if a conviction ensues, that when measured by the provisions of section 4½ of article VI of the Constitution, such immaterial, incompetent and prejudicial matter neither contributed to nor controlled the verdict. The errors here present and the prejudicial evidence born thereof will not permit of the application of the saving grace of the constitutional section, and therefore we have no recourse but to hold that the judgment and the order denying the motion for a new trial must be reversed.

In closing we deem it opportune and timely to repeat the salutary admonition contained in *People* v. *Black*, 73 Cal. App. 13, 43 [238 Pac. 374], wherein the court said:

" . . . We feel impelled to direct the attention of district attorneys and trial judges to the frequent occasion which is thrust upon us to save judgments of conviction by means of the provisions of section 4½ of article VI of the Constitution. It seems evident that the prosecutors of the state, and possibly that the trial judges, are conducting criminal cases with an eye to the saving grace of the section. It should be manifest that such a course is improper. In the performance of their respective duties incident to trials, the existence of the section is of no concern to these officers. That part of the organic law of the state is of interest, so far as its application is concerned, if we except proceedings on motion for a new trial (see *People* v. *Tomsky*, 20 Cal. App. 672 [130 Pac. 184]), only to the courts of review. District attorneys and trial judges should conduct the trial of criminal cases exactly as if the section did not exist. Such a course, if faithfully and diligently pursued, will lessen the number of appeals, will shorten the time necessary for the consideration of appeals which are taken, will lessen the number of retrials by superior courts, and will conduct to the general dispatch of business in both trial and appellate courts."

For the reasons stated, the judgment and the order denying defendant's motion for a new trial are, and each of them is, reversed, and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.