[Crim. No. 5990. Second Dist., Div. Three. July 22, 1958.]

THE PEOPLE, Respondent, v. WILLIAM A. IRWIN,
Appellant.

Cantillon & Cantillon for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

SHINN, P. J.—William A. Irwin and Raymond Lee Mulkey were jointly charged with (1) assault with a deadly weapon with intent to commit murder, (2) attempted robbery, and (3) burglary, and by amended information, Irwin was charged with robbery. Defendants were granted separate trials. In a

jury trial Irwin was convicted of all four offenses, his motion for a new trial was denied and he appeals from the judgment and order.

It is not contended on the appeal that the evidence was insufficient to justify the verdicts. Samuel R. Sirianni was one of the owners of Phil's Market in Sylmar, Los Angeles County. At about 9 p. m., October 6, 1955, he closed the market and, upon the parking lot adjoining, was assailed by two men who handcuffed him and at the point of guns and a knife forced him to open the market and the safe from which they took $7,000. They tied up Sirianni and fled. No arrest was made until an attempted burglary of the market May 25, 1956, when Irwin and Mulkey were arrested. In the October robbery the men were not masked. Upon the trial Sirianni identified Irwin as one of the men who committed that robbery and also identified him as one of two men who attempted to rob him May 25, 1956. On the latter date Sirianni opened the market at about 6:40 a. m.; he noticed that some packages had been knocked to the floor, procured a gun, tiptoed to a rear room and switched on the lights. Two men, wearing masks, appeared with guns from behind boxes, and shots were exchanged simultaneously. The smaller of the intruders fell to the floor, Sirianni's gun jammed, he retreated, fell, rolled away from the gunfire and escaped. The mask worn by the larger man slipped and Sirianni recognized him as the man who had committed the October robbery. Sirianni and another man returned to the market in time to see two men getting into a late model tan Ford station wagon. The smaller of the two men was doubled up, holding his midsection. Irwin and Mulkey were placed next at Mulkey's home which was about 18 minutes drive from the market. Helmi Lehtola, who lived next door to the Mulkeys, and had seen Irwin and his station wagon there on many occasions, testified that shortly after 7 a. m. on May 25th she saw Irwin's station wagon backed up to the rear door of the Mulkey's home; she observed Irwin looking for something in the back of the station wagon and shortly afterwards heard it leave, sounding as though it was going fast. Mrs. Mulkey, *called in rebuttal*, testified for the People that her husband left home about 7 a. m. on May 25th and returned between 7:30 and 8 a. m., announcing that he had been shot. She summoned a doctor, who notified the police. The officers soon came to the Mulkey home and, presumably through some lead unearthed there, at once set out to locate Irwin, who was driving about and

in the afternoon drove to San Bernardino in his station wagon intending to pick up a nephew, William E. Smith, on his way to Big Bear Lake, where they had planned to do some fishing. Irwin went on to a cabin at Big Bear alone. On the following evening Irwin's nephew came to the cabin and informed Irwin that the police were looking for him. On the next day he contacted an attorney in San Bernardino and on the fourth day thereafter visited the police with his attorney, when he was arrested and released on bail.

The principal ground urged for reversal is that the prosecutor was guilty of prejudicial misconduct in the questioning of Mulkey and Mrs. Mulkey in a manner that was intended to prove by indirection that Mulkey was guilty and that, therefore, Irwin was probably guilty.

The question of misconduct is briefed with full recognition of the rule that error in the introduction of evidence by the People or improper statements or conduct on the part of the prosecutor do not add up to misconduct invalidating a conviction in the absence of a showing of bad faith and a purpose to take an unfair advantage of the accused. This is primarily, but not entirely, a question for the trial court. (4 Cal.Jur. 10-Yr.Supp. (1943 ed.) 1008-1009.)

Called as a witness for the People Mulkey testified he had known Irwin for about 30 years. He was shown a gun that was recovered near where the station wagon was parked, close to the market, at the time of the robbery, some gloves and a mask that were recovered at the scene of the robbery, and he testified that he had not seen them before. He testified that on the morning of May 25th, at a point remote from the market, he was shot in the midsection with a pistol and still suffered from the wound. He denied having been with Irwin or at the market on May 25th. He was then asked: "Now, Mr. Mulkey, do you know a man by the name of Schrogin? A. No, sir. Q. He is a Probation Officer? A. Yes." At this point an objection was interposed by defense counsel and a colloquy took place between the court and counsel outside the hearing of the jury. Defense counsel assigned the questioning of Mulkey as misconduct and moved for a mistrial. In the extended discussion which followed it was stated by the prosecutor that Mulkey in the previous week had told Probation Officer Schrogin that he and Irwin had planned the robbery and had related the circumstances of the shooting and his injury, although he denied that he had had a gun. It appeared in the discussion that Mulkey had been tried and

convicted and that before his trial he had made a written confession, which he repudiated at the trial. The prosecutor stated that he had every reason to believe that Mulkey would testify to the facts stated in his confession. It was stipulated, at the request of defense counsel, that Mulkey had not told either of the deputies who were prosecuting the case that he had promised the probation officer that he would testify for the prosecution, and that when requested by the probation officer to reduce to writing his statement implicating Irwin he refused to do so. It was also admitted that the deputies district attorney had not interviewed Mulkey before calling him as a witness. The court denied the motion for a mistrial. Defense counsel moved that the court admonish the jury to disregard any inferences or suggestions that they might ordinarily make from the questions propounded to Mulkey with respect to his knowing Schrogin. When the court was prepared to rule upon this request the following took place: ''MR. CANTILLION: I guess we can let the thing stand the way it is. I will withdraw my motion for the admonishment. THE COURT: I think you will do more damage by an admonishment to the jury than if you leave it alone. MR. CANTILLION: I think your Honor is absolutely right. . . .'' There was no further questioning of Mulkey.

■ The first point for discussion is defendant's contention that the prosecutor was guilty of misconduct in calling Mulkey as a witness, and especially in questioning him with respect to his knowing the Probation Officer Schrogin.

It cannot be doubted that the fact that Mulkey had participated in the crimes would have had a strong tendency to implicate Irwin, but in view of the evidence that had been introduced, and was to be introduced, to prove that one of the robbers was shot and was seen entering a Ford station wagon, that Irwin's Ford station wagon of the same description as the one the man entered was backed up to the rear door of the Mulkey home shortly after the robbery, that Mulkey had left his home early that morning, returned at about the time Irwin's station wagon was there and was then suffering from a gunshot wound, it was proper to prove by Mulkey that he had been shot in the early morning of May 25th.

■ The further questioning, which failed to elicit testimony that Irwin participated in the crime, and the reference to the probation officer presents another question, namely, whether it was misconduct to question Mulkey with respect to

Irwin, with the intention of offering his confession to Schrogin if he failed to implicate Irwin. This appears to have been the prosecution's purpose. The People offered to prove the confession, which was refused by the court. We believe the court was warranted in holding that the prosecutor did not act in bad faith in view of his assurance to the court that he was expecting that Mulkey would testify to the facts which the prosecutor understood had been stated to Schrogin.

Although one who has been surprised by unexpected testimony of his witness may be permitted to prove statements inconsistent with his testimony, this privilege could not be used by the prosecutor merely as a means of getting before the jury the fact of Mulkey's inadmissible confession. Any claimed impeachment of Mulkey's testimony would have been of the least possible significance in resolving the material factual issues as compared with the devastating harm to Irwin of evidence of the confession, if, as claimed, it implicated him. (*People* v. *Albertson*, 23 Cal.2d 550, 576-577 [145 P.2d 7]; *People* v. *Lapin*, 138 Cal.App.2d 251 [291 P.2d 575]; *People* v. *McCullough*, 158 Cal.App.2d 310 [322 P.2d 289].) It is contended that the prosecutor had no sufficient reason for assuming that Mulkey would testify in accordance with his confession when he had not been interviewed concerning the testimony he would give, but if this was merely an error of judgment it would fall short of misconduct. Mulkey was unpredictable. He had confessed at first, repudiated his confession at his trial, and had again confessed. Even if he had promised to testify in accordance with his confession, he might have refused to do so. In ruling that it was proper to interrogate Mulkey in a manner which resulted in his denying that he had been with Irwin or at the market on May 25, the court impliedly held that the prosecutor acted in good faith and in the reasonable belief that Mulkey would admit on the stand that he and Irwin committed the crimes. We cannot disagree with this ruling.

It is apparent that the questioning of Mulkey, which developed that he knew the probation officer Schrogin, carried an implication that Mulkey had been convicted, which fact would have been seriously harmful to Irwin. But the purpose of the prosecutor appears to have been to lay a foundation for Mulkey's impeachment in order not to be bound by his denials and not merely to develop facts which would have tended to prove that Mulkey had been convicted. This is borne out by the fact that the People recognized throughout the trial that

evidence of Mulkey's conviction would be inadmissible, made no effort to bring it to the attention of the jury, but carefully refrained from doing so. But whatever harm was caused, if harm there was, could probably have been corrected by an admonition which defense counsel at first requested. Even if the jurors were caused to suspect that Mulkey had been convicted this would have added but little to a conclusion reasonably deducible from the evidence that he was guilty. It appeared from the evidence, other than that given by Mulkey, that, in all probability, he was the man who was shot in the market and who entered the station wagon holding his midsection, since, admittedly, he arrived home in a wounded condition at the time Irwin had his station wagon backed up to the rear door of the Mulkey home. Counsel's withdrawal of his request that the jury be admonished was of the same significance as would have been a failure to make an assignment of misconduct. In such cases misconduct can only be treated as ground for reversal if harm to the accused is so grievous as to be beyond correction through the court's admonition. (3 Cal.Jur.2d 647-648.) This, we believe, was not such a situation.

As previously mentioned, Mrs. Mulkey was called in rebuttal and testified for the People. In addition to her testimony we have mentioned, she testified that they had only one car, a 1947 Studebaker, that her husband left in it around 7 o'clock in the morning and returned from a half hour to an hour later. She did not see him drive in but she did move the car from the front to the rear of the house. Officer Kunkle, also called in rebuttal, testified that he went to the Mulkey residence about 8 o'clock a. m. on May 25th. He found a 1947 Studebaker on the premises; he checked it for blood and bullet holes, found none, raised the hood, felt the motor block and radiator and they were cold. When Mrs. Mulkey testified that her husband left the house in the Studebaker defense counsel moved for a mistrial on the ground that the witness had been called in bad faith, for the purpose of creating an inference that Mulkey was guilty and that, consequently, defendant was also probably guilty. A motion was made to strike the testimony of Mrs. Mulkey that her husband left in the Studebaker. In the discussion with the court it was conceded by the People that they intended to introduce evidence that the Studebaker had not been driven that morning. The court ruled that further testimony from Mrs. Mulkey that the Studebaker was the only car they owned and that her

husband had been shot while he was away from the house was admissible. Her testimony to those facts was received over objection of the defendant, after the witness had been admonished by the prosecutor to mention nothing concerning her husband's case or that he had been convicted.

It is argued that the prosecutor was guilty of misconduct for the reason that his only purpose in introducing the testimony of Mrs. Mulkey was to prove that she was willing to falsify for her husband and Irwin. From this it is contended the jury could have inferred that if she was willing to give false testimony in order to shield her husband he must have been guilty, and that because of his association with Irwin the latter must also have been guilty. The defendant's counsel are far from inexperienced in trial work and their suppositions as to the impression the testimony may have made upon the minds of the jurors may not be lightly disregarded. We do not put aside their argument as fanciful, but, as we shall see, the matter was not important.

It was unnecessary for the People to elicit any testimony from Mrs. Mulkey for the purpose of contradicting it by the testimony of Kunkle. It was, however, proper for the People to prove by her that she and her husband had but one car, and it was manifestly proper to prove by Officer Kunkle that the motor and radiator of that car were cold shortly after Irwin's station wagon was seen backed up to the rear door of the Mulkey residence. Such evidence would have served the purpose of the People in their efforts to establish the fact that Mulkey had left his home and returned to it in a vehicle other than his own. But if an inference adverse to defendant might have been drawn by the jury, as counsel feel was probably done, it would have been of minor significance, and could scarcely have added any appreciable weight to the other evidence of Mulkey's participation in the commission of the offenses. It is unnecessary to repeat it or even to summarize the incriminating evidence, all of which forcibly pointed to the conclusion that Mulkey was shot during the attempted robbery and was immediately taken to his home by Irwin. These were the essential facts which the People endeavored to prove. While it was unnecessary to elicit testimony from Mrs. Mulkey that her husband had driven away in his own car the other testimony which she gave was not improperly elicited. But aside from these facts we think there was no reason to suspect that the deputy district attorney did not act in entire good faith. The trial court did not err in

holding that there was no misconduct in the questioning of Mrs. Mulkey.

Although the point is but briefly mentioned by appellant, we cannot overlook the fact that it was improper to call Mrs. Mulkey in rebuttal as a witness for the People. There were three material and relevant facts to which she testified, namely, that she and her husband owned but one car, that her husband left the house early on the morning of May 25th and that he returned in a wounded condition. These were facts which constituted a part of the People's case in chief and they were the only facts which could properly have been proved by the testimony of Mrs. Mulkey. Her testimony was not proper rebuttal. It was not contradictory of any evidence that had been produced by the defense. The court ruled: "They [the People] are entitled, in my opinion, to produce any evidence from which a reasonable inference might be drawn counteracting his alibi defense." This was to fail to distinguish between evidence which is a part of the People's case in chief and evidence which is not, and may be introduced on rebuttal. The People have no right to withhold a part of their evidence in chief with the intention of introducing it in rebuttal. (*People* v. *Rodriguez,* 58 Cal.App.2d 415, 419 [136 P.2d 626].) If an objection had been made upon that ground it should have been sustained. However, we cannot see that the defendant suffered prejudice. The record clearly indicates that if Mrs. Mulkey had given the testimony which we hold was admissible as a part of the People's case in chief, the defense would not have undertaken to prove that the Mulkeys had more than one car, that Mulkey did not leave the house early on the morning of the 25th or that he did not return in a wounded condition. The irregularity was but a harmless error.

The final point is that the court erred in excluding from evidence a defendant's exhibit marked for identification. This purported to be a photograph of a partner in crime of one Brady. The supposed partner was a small man, Brady a large man. Sirianni, according to the testimony, had stated that Brady, in his picture, looked similar in size and general build to the larger of his assailants. It is argued that the picture of Brady's companion was of a dark-complexioned man, such as Irwin's companion, as described by Sirianni. Appellant argues that if Brady's companion was similar in appearance to the smaller of Sirianni's assailants, the jury might have concluded, if it had examined the photograph of

Brady's companion, that Sirianni, noticing the similarity, had actually identified Brady as one of his assailants and not merely as one who resembled his assailant. We do not think this evidence would have had any tendency to overcome the fact testified to by Sirianni and the officers that Sirianni did not identify Brady as one of his assailants, but only stated that there was a resemblance. It is not at all clear that the photograph was excluded from evidence. It was denied admission when first offered, but was marked for identification. Later the court granted the motion of defense counsel for the receipt in evidence of all the defendant's exhibits that had been marked for identification. It does not appear that the photograph in question was not among them. But be this as it may, it would not have been error to exclude from evidence the photograph of Brady's companion, who at no time was identified by Sirianni as the man who accompanied Irwin.

 Although we are of the opinion that there was improper interrogation of Mulkey by questions which were intended to lay a foundation for his impeachment by proof of his confession following his conviction, and improper interrogation of Mrs. Mulkey as to the manner in which her husband left home on the morning of May 25th, for the sole purpose of proving that she testified falsely that he drove his own car, the contention that this manner of interrogation constituted misconduct on the part of the prosecutor has not been established. Moreover, while we have not related Irwin's testimony, we cannot agree that the question of his guilt was a close one. His defense consisted of his own uncorroborated testimony that he was at a lodge meeting the night of October 6, 1955, and that he was in bed at home at the time of the commission of the crimes on May 25, 1956, supplemented by the favorable testimony of numerous character witnesses. He was positively identified by Sirianni as a participant in the crimes and was directly tied to them by the circumstantial evidence.

The judgment and order are affirmed.

Wood (Parker), J., and Nourse, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.