[Crim. No. 7134.   Second Dist., Div. Three.   Feb. 28, 1961.]

THE PEOPLE, Respondent, v. ANTONIO COLIN PEREZ, Appellant.

Robert J. North, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Roy A. Gustafson, District Attorney, and Stanley E. Cohen, Deputy District Attorney, for Respondent.

FORD, J.—This is an appeal from a judgment of conviction of possession of heroin (Health & Saf. Code, § 11500) and from an order denying a motion for a new trial. At the time of trial, defendant admitted that, as alleged in the information, in 1952 he had been convicted of the crime of possession of narcotics, a felony, and had served a term therefor in the California State Prison.

The issues raised on this appeal relate to the validity of the search warrant under which the officers proceeded and to the propriety of the ruling of the trial court as to the admissibility of a tape recording of a statement made by another person. Such facts as are pertinent to those matters will be stated.

On June 30, 1959, Captain Patton of the Oxnard Police Department presented an affidavit to a judge of the Municipal Court of the Oxnard-Port Hueneme Judicial District in support of his application for a search warrant. The body of that affidavit is set out in the footnote.[1] A search warrant was

---

[1] "'Edward C. Patton, being first duly sworn, deposes and says: That he believes that there is now in the possession of Tony Perez and Elias Perez on the premises located at 432 North Bonita Avenue, Oxnard, California, a one-story dwelling house, including all rooms, attics, basements and other parts therein, the surrounding grounds and any garages, storage rooms and outbuildings of any kind located thereon, the following property: heroin, marijuana and other narcotic substances.

"'That your affiant believes that the said property constitutes evidence which tends to show that a violation of section 11500 of the Health and Safety Code, a felony, has been committed, and that said property is in

issued as requested. At approximately 9:15 p. m. of that day, Captain Patton and other officers went to the premises therein described. Captain Patton testified that when he knocked on the front door of the residence, the appellant Antonio Colin Perez pulled the curtain back and looked through the window at him. The appellant then "turned hurriedly away, heading in the opposite direction." Patton had seen the appellant more than 50 times and had talked to him over 20 times before this occasion. The front door was locked. Patton entered the house through the back door. He placed both the appellant and his brother, Elias Perez, under arrest for the illegal use of narcotics because in his opinion they both were under the influence of narcotics. Then he gave them copies of the search warrant and read the original to them.

Raymond R. Higgins, a deputy sheriff of Ventura County, one of the officers present, testified that he searched the bathroom and found "a clear plastic-type bottle containing approximately 50 capsules that contained a white powder."[2] The bottle was in the pocket of a sports jacket or coat which was hanging on a clothes rack. He also found in the jacket a small package which contained an eyedropper and a needle.

Arnold Miller, another police officer, testified that he had a

the possession of Tony Perez and Elias Perez with the intent to use it as a means of committing said offense because affiant is a Captain on the Oxnard Police Department; affiant observed Charles Valdivia leave the above-mentioned premises in the nighttime on June 27, 1959, and that shortly thereafter heroin was found to be in the possession of Charles Valdivia; affiant observed Vivian Ramos and Reuben Castellanos, both of whom have been convicted of addiction of narcotics, entering and leaving said premises on the evening of June 23, 1959; affiant has been informed by a confidential informant that sales of narcotics have taken place at said premises during the nighttime; said confidential informant has given affiant information in the past which has led to the apprehension and conviction of two individuals charged with the unlawful sale of narcotics; Tony Perez and Elias Perez now reside at said premises; Tony Perez and Elias Perez have been previously convicted of the crime of possession of narcotics, a violation of section 11500 of the Health and Safety Code; said confidential informant told affiant that Tony Perez and Elias Perez were selling narcotics at said premises on the 26th, 27th and 28th days of June, 1959, during the nighttime; the life of said confidential informant would be endangered by revealing his identity; heroin, marijuana and other narcotic substances are likely to be kept on said premises during the nighttime, since sales of said substances appear to have been made during the nighttime.

"That based upon the above facts, your affiant prays that a search warrant issue commanding a search of the person or place named for the property specified, as provided by law."

[2] A forensic chemist testified at the trial that the capsules examined by him contained heroin and methadone, the latter being a synthetic narcotic drug.

conversation with the appellant's brother John about the jacket in the presence of the appellant. When John said that the jacket belonged to him and the appellant and that the appellant wore it most of the time, the appellant made no response. Both Captain Patton and Officer Miller testified that they had seen the jacket on the appellant on prior occasions. There was also evidence that the appellant attempted to dispose of the capsules which the officers had found by grabbing the bottle and trying to flush the capsules down the toilet.

On behalf of the appellant, his brother John testified that the sports jacket was his but that both he and the appellant had worn it. However, the witness had not worn it for over a year and the appellant had not worn it for three or four months before his arrest. It "was just laying there." On the night of the arrest, the officers called the appellant and Elias into the bathroom. The witness told an officer that the jacket was his when he was asked as to whom it belonged. In his own defense, the appellant testified that he had never seen the plastic bottle before the officers showed it to him. The eyedropper and hypodermic needle were not his; he had never seen them before and did not know they were in the house. He was not under the influence of narcotics on that night. He had not worn the jacket for over six months; he told the officers it was not his. He denied that he had attempted to dispose of the capsules and gave a different version of the incident than that offered by the prosecution. He did not use narcotics on the day of the arrest. On cross-examination, he said that he last used narcotics in 1958. He had been convicted of possession of narcotics, a felony, in 1952. He admitted knowing what heroin is.

Before setting forth portions of the record specifically bearing upon the question raised as to the use of the tape recording, we turn to the issue as to the validity of the search warrant. On July 2, 1959, Captain Patton made his return of the warrant to the magistrate and delivered to him a written inventory of the property taken. (Pen. Code, § 1537.) Thereafter, the appellant instituted an attack upon the warrant pursuant to the provisions of sections 1539 and 1540 of the Penal Code.[3] The matter was heard on July 23, 1959; the

---

[3]Section 1539 of the Penal Code is as follows: "If the grounds on which the warrant was issued be controverted, he [the magistrate] must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing and authenticated in the manner prescribed in section eight hundred and sixty-nine."

Section 1540 of that code is as follows: "If it appears that the prop-

transcript of such proceedings is part of the record on this appeal. At that hearing the appellant asserted that Captain Patton was required to reveal the identity of the informer to whom reference was made in the affidavit. He took the same position at the preliminary hearing and at the trial in the superior court. In each instance, such disclosure was not required to be made by Captain Patton. In addition, prior to the trial he made a motion under the provisions of section 995 of the Penal Code, which motion was denied. It is the appellant's position that he should have been permitted to ascertain the identity of the informer so that he could have rebutted the reliability of the information received from him and contained in the affidavit. He asserts that ''an examination of the affidavit, after striking out the references to the undisclosed informer, shows it to be wholly lacking in facts sufficient to constitute probable cause.''

█ It is, of course, clear that if the search warrant was void because issued without probable cause, the search and seizure pursuant to it were illegal and the articles obtained as a result thereof were not admissible as evidence against the appellant. (See *People* v. *Berger,* 44 Cal.2d 459, 461 [282 P.2d 509].) The issuance of the search warrant was a judicial act and such act was subject to review under sections 1539 and 1540 of the Penal Code, to which the appellant had recourse. (*People* v. *Dosier,* 180 Cal.App.2d 436, 440 [4 Cal. Rptr. 309].) Since at every stage of the proceedings against him the appellant raised his objection to the use of the evidence seized under the search warrant in alleged violation of constitutional safeguards afforded him, it would appear that he is entitled to urge the invalidity of the warrant on this appeal as a ground of reversal. (See *People* v. *Elliot,* 54 Cal. 2d 498, 505 [6 Cal.Rptr. 753, 354 P.2d 225].) █ But, in any event, even if proceedings under sections 1539 and 1540 of the Penal Code had not been had in this case, the matter would properly be before this court because, under the contention of the appellant as stated above, the problem here presented is the sufficiency of the affidavit *on its face* insofar as the question of probable cause is concerned. As said in *Arata* v. *Superior Court,* 153 Cal.App.2d 767, at page 770 [315 P.2d 473] : ''When, as in this case, the defendants fail to pursue

erty taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken.''

this remedy, they should be and, under the circumstances of this case, are precluded from controverting the facts stated in the affidavit upon which the search warrant was based. . . . This, of course, does not preclude a review of the decision of the magistrate by reading the warrant and determining therefrom its sufficiency as a matter of law. That was what the court did in *People* v. *Berger*, 44 Cal.2d 459 [282 P.2d 509], indicated by the statement that the warrant 'placed no restrictions on the area to be searched or the things to be seized' (p. 461), a violation of the requirement that the warrant 'particularly' describe 'the place to be searched and the persons and things to be seized' (Const., art. I, § 19; supplemented by Pen. Code, § 1525).''

In *People* v. *Acosta*, 142 Cal.App.2d 59, at pages 62-63 [298 P.2d 29], the applicable law is succinctly stated:

''Article I, section 19 of the California Constitution provides that no search warrant shall issue 'but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.' The burden to establish the invalidity of the search warrant was on defendant (*United States* v. *Goodwin*, 1 F.2d 36.)

''In determining probable cause for issuance of a search warrant the court is not called upon to determine whether the offense charged was in fact committed, but is concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit for the belief that the law was being violated upon the premises to be searched. If apparent facts set out in the affidavit were such that a reasonably prudent man would be led to believe that there was a commission of the offense charged, there is reasonable cause.''

Probable cause exists when there is such a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion that the charge is true; it may exist even though there is some room for doubt. (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Soto*, 144 Cal.App.2d 294, 298 [301 P.2d 45].)

The factual basis for a finding of probable cause is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Ingle*, 53 Cal.2d 407, 413 [2 Cal. Rptr. 14, 348 P.2d 577].)

The nature of the magistrate's duty is defined in *Arata* v. *Superior Court, supra*, 153 Cal.App.2d 767, at page 773, as follows: ''In arresting without a warrant the officer must

have 'reasonable cause for believing' that the person arrested committed the crime. (Pen. Code, § 836, subd. 3.) When issuing a warrant the magistrate must be satisfied that 'there is probable cause to believe' that grounds for the search exist. (Pen. Code, § 1528.)'' Cases relating to probable cause when a search is made by an officer without a warrant are, therefore, helpful in resolving the problem presented in the present case. As Mr. Justice White stated in *People* v. *Ingle, supra,* 53 Cal.2d 407, at page 412 : ''Each case must be decided on its own facts and circumstances . . . and on the total atmosphere of the case.'' ▮ Matters which may be taken into account include the past criminal record of the suspected person and his association with known narcotics users (*People* v. *Escobosa,* 179 Cal.App.2d 751, 755 [3 Cal.Rptr. 917] ; *People* v. *Fabela,* 175 Cal.App.2d 543, 544 [346 P.2d 847] ; *People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174] ; *People* v. *Gorg,* 157 Cal.App.2d 515, 520 [321 P.2d 143]), and the fact that a person was found to be in possession of a narcotic shortly after he left the premises of the suspected person. (See *People* v. *Montano,* 184 Cal.App.2d 199, 204 [7 Cal. Rptr. 307].)

▮ The affidavit of Captain Patton stated his belief that the appellant and his brother Elias were in possession of narcotics.[4] He further said therein that the two brothers resided on the premises and that they had been previously convicted of the crime of possession of narcotics. He had observed Vivian Ramos and Reuben Castellanos, both of whom had been convicted of the offense of narcotics addiction, enter and leave the premises on the evening of June 23, 1959. He saw Charles Valdivia leave the above-mentioned premises in

---

[4]The state of mind of the officer was pertinent. As this court said in *People* v. *Ramirez,* 185 Cal.App.2d 301, at page 308 [8 Cal.Rptr. 184]: ''What the court apparently sought to determine was whether, aside from the information supplied by the confidential informant, the other information possessed by the officer led him to believe that the appellant was committing or had committed a felony. If the officer, on the basis of such other information, did have a state of mind consisting of such belief, it would then be the duty of the court to determine whether the state of facts known to the officer, and which brought about that state of mind, satisfied the objective standard of reasonable or probable cause which has been set forth hereinabove in the quotation from *People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]. There is nothing in the record to support any contention that the trial court failed to perform its duty, which is stated in *People* v. *Boyles,* 45 Cal.2d 652, at page 656 [290 P.2d 535], as follows: 'Since the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based.' ''

the nighttime on June 27, 1959, and "shortly thereafter heroin was found to be in the possession of Charles Valdivia."[5] The affidavit was made by a person holding a public position of great responsibility. It is clear, therefore, that if the parts of the affidavit relating to information received from a confidential informant be disregarded, the remaining portions thereof were sufficient to satisfy the magistrate that there was probable cause to believe that the grounds for the search existed. Consequently, there was no error in the consistent refusal to disclose the identity of the confidential informant. (See *People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19].) As aptly said in *People* v. *Thornton,* 161 Cal.App.2d 718, at page 722 [327 P.2d 161] : "A thorough reading of the reporter's transcript leads us to the conclusion that the confidential informant in this matter was neither a participant in, nor a witness to, the crimes with which the appellant was charged. The informant gave information to the police, which resulted in their investigation, and the later securing of the search warrant. The court did not have to rely upon the informant to establish Thornton's guilt. Under such circumstances the prosecution is not required to disgorge the name of the informant [citations]."

A more difficult problem is presented by another ruling in the course of the trial of which the appellant here complains. As part of the case of the prosecution, Joe Ledesma, Jr., was called as a witness. He was 18 years old and had been brought into court from Tracy where he was in the custody of the Youth Authority because of an incident of possession of narcotics. On direct examination, he said that he did not know the appellant, had never seen him before, and had not purchased heroin from him.[6] The deputy district

---

[5] While the transcript of the proceedings before the magistrate reveals that Captain Patton did not participate in the arrest of Valdivia, he ordered the arrest about the time he saw Valdivia leave the Perez residence. The hearsay nature of what he learned from other officers would not preclude the consideration of such information on the issue of probable cause. *Arata* v. *Superior Court, supra,* 153 Cal.App.2d 767, 775-776; *People* v. *Hood,* 150 Cal.App.2d 197, 200 [309 P.2d 856]; *People* v. *Easley,* 148 Cal.App.2d 565, 568 [307 P.2d 10].)

[6] In *People* v. *MacArthur,* 126 Cal.App.2d 232 [271 P.2d 914], the court said with respect to evidence of a prior sale of heroin, at page 237: "The prosecution had to prove possession on the part of MacArthur of the heroin found in the apartment. This included the necessity of proving knowledge on the part of MacArthur of the presence of the contraband found in the vanity box. [Citation.] The fact that a few minutes before the heroin was found in the vanity box MacArthur was in possession of

attorney then claimed that he had been taken by surprise by the answers of the witness. Outside of the presence of the jury, the prosecutor said that he had in his possession a tape recording of a statement by the witness in which he had stated that he had purchased heroin from the appellant about a month prior to July 1, 1959. Over the objection of the appellant that it was immaterial, the prosecution then asked the witness whether on July 1, 1959, he had had a conversation with Captain Patton, another officer and a deputy district attorney, in which he had said that he had bought heroin from the appellant. The witness answered in the affirmative but said that he was bribed. The witness was then questioned on cross-examination and explained that he meant that he was told that he could go home if he made such a statement; he was then under arrest. On redirect examination, the prosecution explored the matter further without objection. Captain Patton was thereupon recalled as a witness. Without objection, he testified that he never held out any inducement to Ledesma to give information or testify against the appellant. The tape recording was then offered in evidence. Counsel for the appellant objected on the ground that the witness had admitted the prior inconsistent statement, but had given his reason for making the statement. The prosecution's purpose was stated to be that of showing that there was no basis for Ledesma's claim that an inducement had been held out to him. Counsel for the appellant, after the recording had been heard outside of the presence of the jury, further stated that he believed "there are some things in there which would be highly prejudicial to the defendant." The objection of the appellant was overruled. The court instructed the jury that the recording was being played before the jury for the limited purpose of whatever weight it might have in the minds of the jurors in resolving the question of whether Ledesma "was stating the truth when he asserted that this claimed bribery took place, and that he made these statements at the request of Capt. Patton in order to secure his release."

The nature of the statement (which, in question and answer form, is embodied in 17 pages of the transcript) thus brought before the jury can be determined from a summary thereof. Ledesma said that on the night of "the 28th" he purchased heroin from Elias Perez at the residence. In the past he had

a large quantity of heroin, was obviously relevant on these issues, and was therefore also relevant to show that the heroin in the apartment probably belonged to him.''

made three purchases from Elias and one from the appellant, the latter purchase having been made about a month before "on the street" at Roosevelt and Cooper Road. Ledesma said that he would testify before the grand jury or in any court to the truth, which was that he had purchased heroin from the appellant on one occasion and from Elias Perez on three occasions.

Assuming for the moment that a proper case was presented for permitting the prosecution to impeach its own witness, in permitting the introduction of Ledesma's prior statement the trial court interjected a false issue and committed error. The issue as to whether Ledesma or the officer was giving a truthful version of what occurred on the occasion of Ledesma's statement was a fact wholly immaterial on the issue of appellant's guilt. (See *People* v. *Flores*, 37 Cal.App.2d 282, 287 [99 P.2d 326].) Wigmore states: "But whether additional testimony may be introduced as to the *correctness of the explanation* given by the witness [as to the prior inconsistent statement] is doubtful, as a matter of precedent; convenience would seem usually to require its exclusion." (3 Wigmore on Evidence [3d ed.], § 1046.) The same problem was before the court in *Rakes* v. *State*, 158 Neb. 55 [62 N.W.2d 273]. In that case, during the cross-examination of a witness for the defendant, the prosecution was permitted to introduce in evidence a written statement which the witness admitted making and which was inconsistent with certain of her testimony given on direct examination. On redirect examination, she testified that the chief of police told her to tell the truth as to what she knew about the facts, and that part of her prior statement was not true, but she signed it because she was afraid that he was going to take her child away from her. On rebuttal, the officer who had written the statement testified without objection that no threats were made to take the child from her. However, over objection as to its relevancy and competency since the witness had admitted signing the prior statement, the officer was permitted to testify to the conversation and circumstances which occurred with relation to the taking of her statement. This was held to be error. The court quoted from *Brown* v. *State*, 88 Neb. 411 [129 N.W. 545], as follows: "When a witness upon cross-examination admits making statements out of court inconsistent with her evidence upon the trial, it is erroneous to permit other witnesses to testify to the statements admitted by the witness, and to detail the circumstances under which the statements were made." In

*People* v. *Sykes,* 44 Cal.2d 166 [280 P.2d 769], the prosecution was permitted to impeach its own witness, Mercado, upon a showing of surprise. Mercado admitted that he had made prior inconsistent statements but said that he made the particular statement to the police officer because he had a grievance against Sykes and that he was lying when he made the same statement to the prosecuting attorney. The Supreme Court said, at page 172: "Once he admitted the inconsistent statements, it would have been error to introduce other evidence of them." (See also *People* v. *Flores, supra,* 37 Cal. App.2d 282, 287.)

But the error in this case actually had its inception at an earlier stage of the matter. Aside from a showing of surprise when an attempt is made to impeach one's own witness, there is another requirement which is clearly stated in section 688 of Witkin on Evidence: "The prior statement can be considered only for the purpose of neutralizing and counteracting the adverse testimony at the trial. If that testimony does no substantial harm to the examining party's case, there is no real need for impeachment with its accompanying risk of the impeaching matter being improperly treated by the jury as affirmative evidence. 'The testimony which may be contradicted must be prejudicial and detrimental, otherwise the previous statement shown would stand out, not as offsetting contrary testimony already given, but as substantive evidence of a fact.' (*People* v. *Newson* (1951), 37 Cal.2d 34, 41, 230 P.2d 618, infra, § 689; see also 40 Cal.L.Rev. 610)."

Clearly, Ledesma's testimony that he did not know the appellant and had made no purchase from him did not tend to destroy any prior evidence offered by the prosecution. It was not directed to the occasion on which the prosecution charged that the appellant was in possession of heroin. Nor did it result in any evidence in support of the defense. As in *People* v. *Newson,* 37 Cal.2d 34 [230 P.2d 618], Ledesma's testimony was "purely of a negative character . . . neither favorable to one side nor the other." (37 Cal.2d at p. 44.) Unlike the situation in *People* v. *LeBeau,* 39 Cal.2d 146 [245 P.2d 302], there was no damaging impression to be corrected by the prosecution. (*Cf. People* v. *Spinosa,* 115 Cal.App.2d 659, 667-668 [252 P.2d 409].)

But even if the error was not in permitting the impeachment as such but rather in the playing of the tape recording before the jury, there is still presented the question of whether such error was of such a prejudicial nature as to require a

reversal of the judgment. Such determination must be made in the light of other evidence in the record. Prior to the impeachment incident, Captain Patton had testified that, before the date of the arrest, he had had seven conversations with the appellant which he could recall relating to the use of heroin by the appellant. The most recent talk had occurred in November of 1958 in the presence of an officer from the State Bureau of Narcotic Enforcement. On that occasion the appellant said that he was a user of heroin. The conversation preceding that one was in March of 1958; at that time the appellant said he was a user of heroin. Similar conversations were had in September of 1957, February of 1957, April of 1955, November of 1954; the earliest conversation was in 1954.[7] The officer further said that on June 30, 1959, on the occasion of the arrest, he observed fresh needle marks on the appellant's wrists. It was his opinion that he was under the influence of heroin at that time. When testifying on his own behalf, the appellant admitted that he had been convicted of the offense of possession of narcotic in 1952 but said that he last used narcotics in 1958 and had used none on the day of his arrest. He knew what heroin is. But the consideration by the jury of the evidence of the conversations with respect to the prior use of narcotics, the prior conviction, and appellant's own testimony as to knowledge of heroin, was, as a matter of law, limited in extent; such evidence could not be considered as having a general bearing on the issue of the guilt of the appellant. However, the Ledesma statement related to sales alleged to have been made by the appellant's brother and to a sale which was said to have been made about a month prior to June 30, 1959, by the appellant. Even in the light of an instruction as to the limited purpose for which such evidence could be considered, given by the court in the course of its instructions to the jury,[8] the danger of its misuse

[7]No question is raised on this appeal with respect to such evidence. Evidence of such a nature is admissible upon the issue of a defendant's knowledge of the narcotic character of the objects he is alleged to have possessed. (*People* v. *Sykes, supra,* 44 Cal.2d 166, 171; *People* v. *Cervantes,* 177 Cal.App.2d 187, 190 [2 Cal.Rptr. 107]; *People* v. *Jackson,* 164 Cal.App.2d 772, 777-778 [331 P.2d 218]; *People* v. *Sanders,* 163 Cal. App.2d 132, 134 [328 P.2d 825]; *People* v. *Freytas,* 157 Cal.App.2d 706, 719 [321 P.2d 782]; *People* v. *Ballard,* 145 Cal.App.2d 94, 98 [302 P.2d 89]; *People* v. *Torres,* 140 Cal.App.2d 751, 755-756 [295 P.2d 904]; *People* v. *Tabb,* 137 Cal.App.2d 167, 171 [289 P.2d 858].)

[8]Such instruction was as follows: ''THE COURT: Along the line of the instructions I have just given you, this further instruction of a more specific nature is now presented.

''You have been advised generally what impeachment is and how a

by the jurors was great. It was not evidence that in fact the appellant had made a prior sale but its necessary effect was to implant in the minds of the jurors the idea that the appellant must have made the sale and thus that it was probable that he was often in possession of heroin and consequently was probably guilty of the crime charged. (*Cf. People* v. *McCullough,* 158 Cal.App.2d 310 [322 P.2d 289] ; see *People* v. *Irwin,* 162 Cal.App.2d 298, 303 [327 P.2d 982].) The words of Mr. Justice White in *People* v. *Lapin,* 138 Cal.App.2d 251, at page 264 [291 P.2d 575], are pertinent in the present case: "In the case now engaging our attention, as we have heretofore noted, the evidence is in sharp conflict, it is true that the jury had an opportunity to observe the demeanor of the witnesses, and may have had reason to return the verdict they did, irrespective of the error committed during the trial. As to this of course, we can say nothing. From the mere record as we read it, however, the errors may have turned the scale in favor of the prosecution. It is the bounden duty of courts to insist that a defendant be fairly convicted, because if he is not so convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent. The fact that the evidence may point rather conclusively to defendant's guilt does not take from the latter his right to such a fair and impartial trial." (See also *People* v. *Barquera,* 154 Cal.App.2d 513, 518-519 [316 P.2d 641].)

---

party may attempt to accomplish it. Ordinarily a party to a trial is not allowed to impeach his own witness. However, if the party is taken by surprise, the Court may permit such party to present evidence calculated by such party to impeach.

"I have ruled in this case that the prosecution was taken by surprise when its witness Ladezma [*sic*] said he did not know defendant or did not buy any heroin from him. Therefore, the prosecution was permitted to present evidence for purposes of impeachment; that is, for a purpose of getting you jurors to decide that Ladezma [*sic*] was not telling the truth when he said that he did not know the defendant and did not buy any heroin from him.

"It is for you to determine the credibility of this witness. In its attempt to impeach the witness Ladezma [*sic*] the prosecution was permitted to introduce testimony of Capt. Patton as to a conversation he had with Ladezma [*sic*] and was permitted to introduce in evidence and there was played to you an alleged tape recording of the prior statement made by Joe Ladezma [*sic*] to Capt. Patton and Maurice Muehle and Raymond Higgins.

"You are instructed that such testimony of Capt. Patton of his conversation with Ladezma [*sic*] and the tape recording was not received for the purpose of proving the truth of what was stated, but only for the purpose of impeachment of the witness. You are permitted to consider such evidence only for that purpose and you are the exclusive judges of the effect of such evidence on that witness's credibility."

For the reasons herein stated, the judgment and the order denying the appellant's motion for a new trial are reversed and the cause remanded for a new trial.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied March 27, 1961, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1961.