[Crim. No. 5598.   Second Dist., Div. Three.   July 11, 1956.]

THE PEOPLE, Appellant, v. CORDELL HICKMAN, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), Jere J. Sullivan and Lewis Watnick, Deputy District Attorneys, for Appellant.

Carter, Flournoy & Woods and James L. Flournoy for Respondent.

WOOD (Parker), J.—By information defendant was charged with violating section 11500 of the Health and Safety Code, in that, he unlawfully had heroin in his possession. At the time set for entering a plea to the charge, the defendant made a motion ''under Section 995 Penal Code.'' That section provides: ''The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases: If it be an indictment: . . . If it be an information: 1. . . . 2. That the defendant had been committed without reasonable or probable cause.'' The motion was granted. The People appeal.

The transcript of the preliminary examination shows that Officer Nall, a police officer of the city of Los Angeles, testified that he was one of the arresting officers; the arrest was made on October 10, 1955, at 8:30 p. m., at the intersection of 60th Street and Central Avenue; at the time of the arrest defendant was with one Kimble; prior to that time he (officer) had received information concerning possession of narcotics by Kimble; he had received that information several times, and the last time was about two weeks before the arrest; on the day of the arrest the officer (witness) was watching a house on 43d Street in which Joe Taylor lives, and ''I had arrested him [Taylor] previously on narcotics and talked to him since his release from jail and he told me he would continue to deal with narcotics because he was safe in his house''; the officer went there for the purpose of ''making a surveillance of the house in regard to narcotics''; about 8:10 p. m. he saw defendant go into the house; a few minutes later he (officer) saw defendant come out of the house with Kimble; he saw them get in a car; he and Officer Beckman followed the car and kept them under surveillance until they arrived at 60th and Central, when the officers stopped them; defendant and Kimble had stopped there for a red light, and the officers blocked their path with the officers' car; the officers removed them from the car and told them

they were under arrest for suspicion of narcotics; the officers searched them for weapons and narcotics but did not find any; defendant, who was driving the car, did not have a driver's license, and the officer (witness) told him that they would have to arrest him "for suspicion of grand theft auto" and take him to the police station; the officer said to defendant, "I can't see how you came out of that house without some narcotics on you"; defendant laughed, and the officer said, "Well, take your shoes off"; defendant took his shoes off, and the officer found a bindle of powder in defendant's sock; the officer delivered the bindle to the property section of the police station; defendant said that he bought the bindle about four hours previously for a friend and he paid $4.00 for it. On cross-examination, the officer testified that he knew that Kimble was an associate of Taylor; after defendant came out of Taylor's house with Kimble, defendant and Kimble drove about two miles before the officers stopped them; the car was registered in a name which was different from the name of defendant; the officer was told that the car was registered in the name of defendant's mother.

The transcript of the preliminary examination also shows that Officer Allen, an expert chemist, testified that the bindle contained heroin.

At the preliminary examination on October 17, 1955, the prosecution offered the bindle in evidence. Defendant did not object thereto. The bindle was received as Exhibit 1.

Appellant asserts that defendant was committed for trial in the superior court with reasonable and probable cause.

The committing magistrate could have found: That Officer Nall had received information several times concerning possession of narcotics by Kimble, and the last time he had received such information was two weeks before Kimble and defendant were arrested. That officer Nall knew that Kimble was an associate of Taylor. That Taylor had been arrested previously by Officer Nall for a crime involving narcotics, and that Taylor, after his release from jail, had told Officer Nall that he would continue to deal with narcotics because he was safe in his house. That, preceding the arrest, Officer Nall was watching Taylor's house "in regard to narcotics," and he saw defendant go into Taylor's house and, a few minutes thereafter, he saw Kimble and defendant come out together and get in an automobile, which defendant drove to the place of arrest.

The evidence in the present case was sufficient to

justify the officers in believing that defendant Hickman was aiding and abetting Taylor in continuing "to deal with narcotics," or was aiding and abetting Taylor and Kimble in dealing with or possessing narcotics. ■ A rule as to what constitutes reasonable or probable cause is stated in *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73], at page 92, as follows: " 'There must be such a state of facts' . . . 'as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty.' " In *Brinegar* v. *United States,* 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879], it is said at page 175: " 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' " ■ "[R]easonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) In *People* v. *Rodriguez,* 140 Cal.App.2d 865 [296 P.2d 38], wherein the question was whether the arrest and search were lawful, the officers, who had received no information about defendant, observed the defendant standing and looking at an excavation; the defendant walked toward the police car and appeared to be nervous, and one of the officers, while talking to defendant, noticed that the defendant's eyes seemed to be pin-pointed; the officer asked him if he would sit in the police car while they carried on a conversation with him; defendant said that he would; the officers gave him a "frisk" for weapons, and then placed him in the automobile, went to a call box and "ran a warrant on him"; there was no warrant, and they told defendant he could go; as he was leaving, one of the officers noticed a newspaper sticking out of the cuff of defendant's pants; the officer stopped defendant and took the newspaper from the cuff; heroin was in the newspaper. In that case, a police officer testified that the area where defendant was arrested is an area "that we have known users and pushers of narcotics." The court held therein (p. 869) that when all the circumstances are considered together they authorized a lawful detention of the defendant based upon reasonable cause; that the search, as an incident of the arrest, was reasonable; and that the heroin obtained in the search was admissible in evidence.

■ In the present case, the circumstances justified the detention of Kimble and defendant based upon reasonable

cause, and the search of defendant was an incident of the arrest and was reasonable.

The order granting the motion (made under Pen. Code, § 995) is reversed.

Shinn, P. J., and Vallée, J., concurred.