[Crim. No. 5798.  Second Dist., Div. Two.  Feb. 19, 1957.]

THE PEOPLE, Respondent, v. RANSOM EASLEY, Appellant.

*Assigned by Chairman of Judicial Council.

Robert J. Hall for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant, after a nonjury trial, was convicted of violation of Penal Code, section 337a, subdivision 2, in that he and his codefendant Johnson did, on May 8, 1956, occupy an apartment in the city of Los Angeles for the purpose of recording and registering bets on horse races. The court suspended proceedings and granted probation. Defendant moved for a new trial which was denied. Thereupon defendant filed a notice of appeal "from the judgment therein entered" and from the order denying a new trial.

As no judgment was actually entered the respondent raises a question of the effect of a notice of appeal worded as above indicated. Section 1237, Penal Code, was amended in 1951 to provide for an appeal by a defendant from an order of probation, saying in subdivision 1: ". . . an order granting probation shall be deemed to be a final judgment within the meaning of this section." ▮ Since that amendment it is immaterial whether a defendant appeals in terms from the order of probation or from the judgment. For purposes of appeal they are interchangeable terms. It was so held in *People* v. *Goldstein,* 136 Cal.App.2d 778, 793 [289 P.2d 581], and *People* v. *Reed,* 128 Cal.App.2d 499, 500, 502 [275 P.2d 633]. The instant appeal is to be treated as one taken from the probation order.

Appellant's sole argument is that he was convicted through use of evidence seized as a result of a wrongful search, which evidence he seasonably and unsuccessfully sought to suppress. The claim is found to be without merit.

On May 8, 1956, Officers Braun and Andrews, of the Los

Angeles City Police Department, were possessed of information that bookmaking was being conducted at premises whose telephone number was Adams 1-7251. The source of the information was not disclosed to the court. They found said telephone number to be that of a residence, apparently an apartment, at 111 West 40th Place, Los Angeles, listed in the name of Eva May. The officers on that same day ''staked out'' that residence, parking their unmarked car some 75 feet away and watching what went on for about an hour. During that period some 10 to 12 people would approach the front door, knock once, wait a brief period, the door would open and they would enter. After a lapse of five to ten minutes each would leave the premises. The officers then placed themselves on the side of the house, close to the front door. About 3 o'clock an unidentified man climbed the stairs of the front porch, went to the door, knocked, and while he was awaiting admittance the two officers came up behind him and looked through the open door. When Braun, who is an expert on bookmaking customs and practices in the area, did so he saw Johnson standing inside, to the right of the living room door, and defendant Easley seated at a table in the kitchen which adjoined the living room, the intervening door being open. Easley was telephoning; on the table in front of him were a racing form, several copies of National Daily Reporter, some scratch sheets and a ''magic slate.'' Just to the left of the slate and in front of Easley was a pad of white paper about 6 by 3 inches in size with a betting marker on the top sheet. Defendant had a pencil in his hand and was about to write on the slate when Braun entered the living room. As he passed Johnson the latter said ''Eas'' and defendant Easley immediately lifted two pieces of paper from the slate and writing which the officer saw thereon as he approached immediately disappeared. Thereupon an arrest of Easley and Johnson[1] was made and search begun, but it seems to have been limited to the persons of defendants. A betting marker was taken from Johnson's wallet and a front door key from each defendant. The seizure embraced those items and such objects as were in plain sight, above enumerated. Defendant's argument on appeal is a claim that the seizure was unlawful because there was no reasonable basis for an arrest and hence no right of search or seizure without a warrant. There was no warrant here.

---

[1]It appears that Johnson was bound over for trial but the subsequent history of his case is not disclosed by the record at bar.

Reasonable ground for arrest need not be based upon evidence which would be competent at a trial; it may be hearsay; and although information furnished by an anonymous informer is not enough to afford reasonable ground, it is proper to be considered by the officers in forming their opinion as to whether reasonable cause for arrest exists.  "Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122].)  In *People* v. *Novell,* 54 Cal.App.2d 621, 623 [129 P.2d 453], the concept is thus defined: " 'By "reasonable or probable cause" is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*In re McCarty,* 140 Cal.App. 473, 474 [35 P.2d 568].)

"The term, probable, has been defined as meaning 'having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.' (*Ex parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].)' "

That information furnished by an unknown informer may be taken into consideration by the officers and the court has been held in *Wilson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]; *People* v. *Moore,* 141 Cal.App.2d 87, 89, 90 [296 P.2d 91]; *People* v. *Soto,* 144 Cal.App.2d 294, 299 [301 P.2d 45]; *People* v. *Thymiakas,* 140 Cal.App.2d 940, 942 [296 P.2d 4]; *People* v. *Sayles,* 140 Cal.App.2d 657, 659 [295 P.2d 579].

The information that bookmaking was taking place in the residence in question was corroborated by the stream of people entering and leaving the same, the manner of entry, and the brief period of the visit.  To the foregoing was added the information obtained by Officer Braun in looking through the door before his entrance into the house.  He is an expert on bookmaking practices and he then and there identified as tools of the trade the things which he saw surrounding defendant's activities.  The situation, excepting the magic slate, was that described in *People* v. *Moore,* 140 Cal.App.2d 870, 873 [295 P.2d 969]: "Defendant obviously was engaged in some activity involving the telephone; she was using other things which, considered separately, could have legitimate uses but which in combination conveyed to the practiced eye of the expert officer 'racing paraphernalia'; there was nothing to indicate that defendant was engaged in any household

chore or other innocent activity. In this respect the case is unlike *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10], wherein the officers looking through a window in a door saw pads of paper such as those used by bookmakers, with writing on the pads. It was held that as those things were reasonably convenient to the conduct of defendant's legitimate business they were insufficient to give rise to reasonable ground for an arrest." In the Moore case the defendant gathered up "her stuff" and ran for the kitchen when the officers identified themselves, "thus placing a sinister meaning upon the various items." (P. 873.) In this case, the presence and use of the magic slate, with its disappearing writing, supplied all the unlawful atmosphere that any fair minded officer would need in order to arrive at the conclusion that a crime was being committed in his presence. These things, except the act of writing upon the slate, were seen before the officers entered the living room. ■ Of course, the use of one's eyes from the outside of a building is neither a search nor a seizure. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Moore, supra*, 140 Cal.App.2d 870, 871.)

The inapplicability of *People* v. *Sanders*, 46 Cal.2d 247 [294 P.2d 10], upon which appellant relies, sufficiently appears from the above quotation from *People* v. *Moore, supra.*

It was a question of fact for the trial judge whether the police had reasonable ground for the arrest in question (*People* v. *Broyles*, 45 Cal.2d 652, 656 [290 P.2d 535]). Defendant contradicted most of the evidence upon which the above statement of facts is based, but the conflict was such that the finding of the trial judge cannot be disturbed.

The arrest was proper, the search reasonable, and the seizure lawful.

The order granting probation (the judgment) and the order denying motion for new trial are affirmed.

Moore, P. J., and Fox, J., concurred.