[Crim. No. 5832.   Second Dist., Div. Two.   Apr. 16, 1957.]

THE PEOPLE; Appellant, v. OTHELLO W. HOOD et al., Respondents.

198

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney, Jere J. Sullivan and Lewis Watnick, Deputy District Attorneys (Los Angeles), for Appellant.

Charles H. Matthews for Respondents.

FOX, J.—Defendants were indicted for possession of heroin in violation of section 11500, Health and Safety Code. Their motion under section 995, Penal Code, to set aside the indictment was granted. The People have appealed from that order.

Shortly before the arrest of the defendants, Helen Delores LaVigne, who was a state parole officer, received information from one of her parolees that defendant Hood, who was also a parolee, had given her narcotics and that he was dealing in narcotics. The parolee also gave Miss LaVigne Hood's exact address, his living arrangement, a good description of his car, and where he could be located generally. Miss LaVigne considered that the source of her information was trustworthy because she had received other information which, upon investigation, had proved to be accurate. Miss LaVigne passed this information on to Albert E. Gustin, who was the supervising parole officer of Hood. Mr. Gustin called the Narcotic Detail of the Los Angeles Police Department and gave them the information he had acquired from Miss LaVigne.

With this information, Officer MacGregor, of the Narcotic Division, went to the apartment house where Hood lived, at about 9:30 in the evening. Hood occupied an upstairs apartment. While going upstairs, the officers met Hood's mother. They identified themselves and asked whether Othello Hood was at home; she advised them that he was there, and in the bathroom. After entering the apartment, one of the officers knocked on the bathroom door and inquired, "Is Othello there?" There was no response. The officers, however, heard a sound, such as a screen or window being opened. At that time, one of the officers ran to the bedroom window, which is on the same side of the house as the bathroom; he forced open the screen and stuck his head out of the window. The windows between the bathroom and the bedroom were only about 3 feet apart. The officer observed an arm coming out of the bathroom window and throwing an object, which landed on a car and bounced off to the sidewalk. The officer ran back to the bathroom door, forced it open, identified himself, and placed defendants under arrest.

The arm that was thrust out of the window appeared to be a man's arm because of its size. When the officer entered the bathroom Hood was standing by the window. The arm that the officer observed at the window looked more like his arm than that of his companion, Mrs. Lewis, whose arm was comparatively thin. Mrs. Lewis was fully clothed, standing by the

wash basin. Defendant Hood was completely unclothed except for boxer-trunks which he was wearing.

The officer then retrieved the package which he had observed being thrown from the window. It was found to contain heroin. Hood made a statement to the effect, "I don't see how you saw me throw it."

Defendants make two contentions: (1) that their arrest "was not lawful," and (2) that "the evidence is not sufficient to show that the offense charged was committed within the period of the statute of limitations."

Defendants' position is that their arrest was unlawful on the ground that the officers did not have sufficient information to establish "reasonable or probable cause" for believing that they were committing a public offense. Reasonable or probable cause has been considered in many recent cases. ▌ Generally speaking, it means "such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty." (*In re McCarty*, 140 Cal.App. 473, 474 [35 P.2d 568]; *People* v. *Novell*, 54 Cal.App.2d 621, 623 [129 P.2d 453]; *People* v. *Smith*, 141 Cal.App.2d 399, 402 [296 P.2d 913]; *People* v. *Soto*, 144 Cal.App.2d 294, 298 [301 P.2d 45].) ▌ "It is settled that reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would necessarily be admissible at the trial on the issue of guilt." (*People* v. *King*, 140 Cal.App.2d 1, 5-6 [294 P.2d 972]; *People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535].) Such information may be hearsay. (*People* v. *Easley*, 148 Cal.App.2d 565, 568 [307 P.2d 10].) ▌ It has frequently been held that "A valid arrest may be made solely by reason of information communicated by a reliable informant." (*People* v. *Montes*, 146 Cal.App.2d 530 [303 P.2d 1064]; *People* v. *Penson*, 148 Cal.App.2d 537 [307 P.2d 24]; *People* v. *Gonzales*, 141 Cal.App.2d 604, 606 [297 P.2d 50]; *Trowbridge* v. *Superior Court*, 144 Cal.App.2d 13, 17 [300 P.2d 222]; *People* v. *Soto*, *supra*, p. 299.)

### The Arrest of Hood

▌ Applying these principles to the case at hand, it is apparent that a sufficient showing was made to establish reasonable or probable cause for the arrest of Hood. Parole Officer LaVigne received information from one of her parolees that Hood had given her narcotics and that he was dealing in the contraband. Her informant also provided his exact

address, his living arrangements, a description of his car, and where he ordinarily could be found. Officer LaVigne considered her informant trustworthy because previous information provided by this parolee had proved to be correct. Since Hood was on parole and under the supervision of Parole Officer Gustin, Miss. LaVigne passed the information regarding Hood's narcotic activities along to him. Instead of taking Hood into physical custody, as he might properly have done (*People* v. *Denne,* 141 Cal.App.2d 499 [297 P.2d 451]), Gustin relayed his information to the narcotic detail of the police department. The police were reasonably justified in relying on this information because it came from an official source, viz., the parole officer who had the suspect under supervision. Defendant, however, would deprecate the reliability of the information because it passed through several hands before it reached Officer MacGregor. █ The fact that the information did not come from the informant directly to the officer who made the arrest does not prevent reliance on its trustworthiness since it reached him through official channels. The arrest of Hood was therefore legal. █ Since the arrest of Hood was lawful, the heroin which was thrown out of the bathroom window and retrieved by the officers was properly received in evidence. It was therefore error to set aside the indictment as against Hood. (See *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23].)

### The Arrest of Mrs. Lewis

█ The arrest of Mrs. Lewis presents a different situation. The officers had no prior information connecting her with narcotics. Just what her relation was to defendant Hood does not appear. However, she was with him, in the restricted space of a bathroom under the unusual circumstance of the door being locked. Hood was undressed except for the boxer-trunks which he was wearing. When the officers knocked on the door neither Mrs. Lewis nor Hood made any response. On the other hand, Hood, who was standing near the window when the officers entered, had disposed of a package containing heroin by throwing it out of the window. These circumstances justify a reasonable inference that the defendant Lewis either had joint dominion and control of the contraband (*People* v. *Bagley,* 133 Cal.App.2d 481, 483 [284 P.2d 36]; *People* v. *Cuevas,* 131 Cal.App.2d 393, 398 [280 P.2d 831]; *People* v. *Lama,* 129 Cal.App.2d 391, 393 [276 P.2d 816]), or that she was aiding and abetting Hood. (Pen. Code, § 31.) █ On

the question of joint possession, the observation of the court in *People* v. *Basco,* 121 Cal.App.2d 794, 796 [264 P.2d 88], is here apposite: "A person may be so closely interested in and connected with the unlawful possession of narcotics by another as to furnish support for a finding that there was a joint possession."

The rule with respect to setting aside an indictment is stated in *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 193 [281 P.2d 250] : "An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." To the same effect is *People* v. *Van Randall,* 140 Cal.App.2d 771, 775 [296 P.2d 68]. Applying this principle to the facts and circumstances surrounding the arrest of defendant Lewis, it is clear the officers had reasonable or probable cause to arrest her. It was therefore improper to set aside the indictment.

Defendants' argument that the evidence does not show that the offense was committed within the statutory period is completely answered by the testimony of Officer MacGregor. He testified that he retrieved the package that was thrown out of the window and marked it with his initials and the date, which "date is 8-22-56." This is sufficient to establish the date on which the alleged offense was committed.

The order vacating the indictment as to each defendant is reversed.

Moore, P. J., and Ashburn, J., concurred.