[Crim. No. 7078.   Second Dist., Div. Three.   Oct. 14, 1960.]

THE PEOPLE, Respondent, v. JOE RAMIREZ, Appellant.

Robert A. Ortiz for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

FORD, J.—The appellant, Joe Ramirez, was accused by information of the crime of possession of heroin in violation of section 11500, Health and Safety Code. He waived his right to trial by jury and was found guilty. This appeal is from the denial of his motion for a new trial and from the judgment. While Isabel Ramirez was also convicted of the offense and filed a notice of appeal, she has failed to prosecute her appeal and it has been dismissed.

On this appeal, the evidence is to be viewed in the light most favorable to the prosecution. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Carnavacci,* 119 Cal.App.2d 14, 16 [258 P.2d 1127]; *People* v. *Renek,* 105 Cal. App.2d 277, 281 [233 P.2d 43]; *People* v. *Von Benson,* 38 Cal. App.2d 431, 434 [101 P.2d 527].) In that light we will sum-

marize the evidence which tends to support the conclusions reached by the trial court. In addition, matters upon which the appellant bases his contentions on appeal will be stated.

Officer Velasquez testified that on July 23, 1959, he arrived in the vicinity of 1712 East 62d Street at about 5 o'clock in the afternoon. Two other officers were with him. At that time, he had certain information. Such information had its sources in complaints of neighbors to law enforcement officials as to the amount of traffic there and in statements from addicts to whom the witness talked as they were being processed through the Firestone Station on narcotic charges. Such neighbors said that many people would go onto the premises at all hours of the day and night, stay a few minutes and then leave. While the officer had personally received information of that kind "from people around the location," he could not identify his informants because they "wouldn't give their names." The addicts stated that they had obtained their narcotics "from Chello, on 62nd Street." On July 23, the witness kept the premises under surveillance for about one-half hour. He noticed one Joe H. Lopez, whom the officers knew had been convicted of "narcotic addiction," enter the premises, remain two or three minutes, and then depart. The officers followed him while he went east on 62d Street for a distance of four or five houses. The witness saw some pink tissue paper leave Lopez' hand and fall to the ground near his foot. In the paper were three gelatin capsules containing a powdery substance which appeared to be heroin and which was later found, upon analysis, to be heroin. Lopez was arrested. The witness and another officer then returned to 1712 East 62d Street. The witness went onto the front porch, knocked on the door, displayed his badge, and called out, "Police officers." The front door was open but the screen door was closed. The officer looked in the screen door and through the living room into the kitchen where the appellant and Isabel Ramirez were sitting at a table. He saw appellant put a white object (which later turned out to be a piece of bread) in his mouth. The officers then entered and the witness told the appellant that he was under arrest for violation of the state narcotic laws. He searched the appellant and found in his left front trouser pocket "two blue pieces of balloons containing gelatin capsules." The contents of the capsules were later analyzed as being heroin. The appellant stated that the substance so found was his and that he knew it was heroin. The officer then said, "Isn't it true that it belongs to Isabel?" He also said that

they had information that they belonged to "Chello," referring to Mrs. Ramirez. The appellant did not reply but then called out to Mrs. Ramirez, who was in the living room, and asked her, "Do you want to tell these police officers about that?" She came into the kitchen and stated that the substance was hers and that the appellant "didn't have anything to do with it." She produced certain paraphernalia for the use of narcotics.

In its attack upon the competency as evidence of the articles so obtained by the officers, the defense offered certain testimony. The appellant testified that he was eating in the kitchen. The officers entered and one officer pulled something out of the appellant's pocket and placed him under arrest. Frances Garcia, who was present at the time, testified to the same effect. Isabel Ramirez testified that she heard no knock before the officers entered. The court held that the evidence was not illegally obtained and that it was competent.

Thereupon, the appellant resumed the witness stand. He testified that he had slept until about 4:30 p.m. Thereafter, he put on his pants which had been on a table. He did not know that any narcotics were in his pocket and had not seen the capsules before the officer removed them from his pocket. He told the officer that he knew nothing about it. Isabel Ramirez testified that she was the wife of the appellant and that he had not been living on the premises except that he would stay "a couple of days" and then leave. She said that she had left the capsules in his pants pocket when she went into his pants pockets, while he was not wearing the pants, when someone came in to borrow money. She placed the capsules there because she had them in her hand. The loan was for Joe Lopez. As to the appearance of the defendant at the time of his arrest, aside from the fact that he was wearing his pants, Mrs. Ramirez testified: "He was in his underwear."

In *People* v. *Ingle,* 53 Cal.2d 407, at pages 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], the applicable law with respect to an arrest such as the one of which appellant complains is thus stated by Mr. Justice White: "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances (*Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374]; *People* v. *Washington,* 163 Cal.App.2d 833, 844 [330 P.2d 67]; *People* v. *Ambrose,* 155 Cal.App.2d 513, 521 [318 P.2d 181])

—and on the total atmosphere of the case. (*People* v. *Scott,* 170 Cal.App.2d 446, 452 [339 P.2d 162] ; *People* v. *Denne,* 141 Cal.App.2d 499, 506-507 [297 P.2d 451] ; citing *United States* v. *Rabinowitz,* 339 U.S. 56, 63 [70 S.Ct. 430, 94 L.Ed. 653].)

     Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] ; *People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73] ; *People* v. *Silvestri,* 150 Cal.App.2d 114, 117 [309 P.2d 871] ; *People* v. *Soto,* 144 Cal.App.2d 294, 298 [301 P.2d 45] ; *People* v. *Smith,* 141 Cal.App.2d 399, 402 [296 P.2d 913] ; *People* v. *Rodriguez,* 140 Cal.App.2d 865, 869 [296 P.2d 38].)    Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. (*People* v. *Nagle,* 25 Cal.2d 216, 222 [153 P.2d 344] ; *People* v. *Novell,* 54 Cal. App.2d 621, 623-624 [129 P.2d 453] ; *Ex Parte Heacock,* 8 Cal.App. 420, 421 [97 P. 77].) It is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. (*People* v. *Fischer, supra,* 49 Cal.2d 442, 446.)

     ''Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest. (*People* v. *Boyles, supra,* 45 Cal.2d 652, 655; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].) Here the officers testified that the arrest preceded the search. The arrest is not sought to be justified by what the search produced.''

     Although information furnished by an anonymous informer is relevant on the issue of reasonable cause, it is clear that such information alone would not have justified the arrest of the appellant in the present case. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].) But, in addition to such information, the officer who testified had talked to addicts who stated that they had obtained their narcotics ''from Chello, on 62nd Street.'' Such information is not to be excluded from consideration because of the fact that it is hearsay. (*People* v. *Hood,* 150 Cal.App.2d 197, 200 [309 P.2d 856] ; *People* v. *Easley,* 148 Cal.App.2d 565, 568 [307 P.2d

10].) However, it is clear that the officers understood that Mrs. Ramirez, and not the appellant, was known as "Chello." While the appellant was seen to put a white object in his mouth, the officer quickly examined his mouth and found that the object was a piece of bread. Consequently, the determinative factor would appear to be the weight to be given to the fact that Lopez, a man having a record as an addict, was seen to enter the premises, stay a short while, and then depart, having narcotics in his possession as the officers approached him. The Lopez incident lent weight to the information previously possessed by the officers (*cf. People* v. *Easley, supra,* 148 Cal.App.2d 565, 568) and justified their reliance on the information they had theretofore received from anonymous sources. (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 295.) In view of the knowledge they had acquired, it was reasonable for the officers to form the belief that Lopez had obtained narcotics in the premises at 1712 East 62d Street.

While Mrs. Ramirez has not pressed her appeal, it seems clear that if she were the person here involved, the arrest and search of the premises for narcotics could not be claimed to have been unlawful. (See *People* v. *Soto,* 144 Cal.App.2d 294, 299 [301 P.2d 45].) The problem presented with respect to the arrest and search of the defendant is a more difficult one. ▮▮▮ It is, of course, clear that the mere fact that a person is on premises where officers have reason to believe there are narcotics will not justify either his arrest or a search of his person. (*People* v. *Boyd,* 173 Cal.App.2d 537, 539 [343 P.2d 283]; *People* v. *Green,* 152 Cal.App.2d 886, 889 [313 P.2d 955].) ▮▮▮ But in the present case there was more than mere presence or association. The appellant was not attired in the usual garb of a mere visitor. When Officer Velasquez saw Mr. and Mrs. Ramirez seated at the kitchen table, it was reasonable for him to believe that they had been joint participants in dealing with Lopez and that the appellant was more than a mere bystander. This conclusion finds support in the reasoning of the court in *People* v. *Soto, supra,* 144 Cal.App.2d 294, at page 300: "As already pointed out, if Garcia were the defendant in the instant case, the search would clearly have been a legal one. But he is not. Soto, a man the police officer, until his entry, did not know was in the room, is the defendant. Does that make any difference? Did the police have reasonable grounds to believe that Soto had committed a felony?

"There can be no doubt that under some circumstances

the fact that the police have the reasonable and probable belief that the known occupant of a room or house has committed a felony will not justify the search or arrest of a casual visitor to that room or house. (*People* v. *Kitchens,* 46 Cal.2d 260 [294 P.2d 17]; *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]; *People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81].) But the rule is not absolute. Each case must turn on its own facts. The test is whether the police had reasonable cause for believing that the person arrested, whoever he may be, has committed a felony.

"In the instant case, for reasons already stated, the police officers had reasonable grounds to believe that the person or persons in Room 37 were in possession of narcotics. He had reasonable grounds to believe that the occupant or occupants of that room were committing a felony. The police officer thought that Garcia, the registered occupant of the room and who was known to the officer, was the culprit. But when the defendant Soto opened the door to the room, and the officer saw him in his bare feet, with Garcia asleep in the bed, he could reasonably conclude that Soto was not a mere innocent bystander or casual visitor. The officer had learned from Shuck that Shuck had just used narcotics in the room and that more narcotics were still there. The officer could reasonably conclude that Soto, the man who answered the door, had been in the room while Shuck had used the narcotics, and had furnished them to him. Accordingly, there existed 'such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty.' (*People* v. *Smith,* 141 Cal.App.2d 399, 402 [296 P.2d 913].)"

As said in *People* v. *Ingle, supra,* 53 Cal.2d 407, at page 414: "The trial court found that there was reasonable cause for the arrest, that is, that there was probable cause. Unless it can be said that prudent men in the position of these officers knowing what they knew and seeing what they did would not have had reasonable cause to believe and to conscientiously entertain a strong suspicion that Ingle was violating or had violated the law, the arrest should be held lawful."

But, the appellant argues, the trial court "was laboring under the impression that it was for the officers to determine subjectively whether they had probable and reasonable cause for the arrest." That argument is based upon a question of the trial judge when counsel for the appellant successfully sought to strike out the testimony of Officer Velasquez as to

information obtained from a confidential informant when the prosecution declined to give the name of such informant. The pertinent portion of the record is as follows (emphasis added):

"THE COURT: May I ask the witness a question? MR. ORTIZ [counsel for appellant]: Yes. THE COURT: You may object to my question if you wish. Q. *Would you have been able to have effected this arrest without having any information from the confidential informant?* A. I believe so, yes, sir. THE COURT: You move to strike everything about the confidential informant? MR. ORTIZ: Thank you, your Honor. THE COURT: Granted." While the court's question might have been more aptly phrased, it does not support the contention of appellant. What the court apparently sought to determine was whether, aside from the information supplied by the confidential informant, the other information possessed by the officer led him to believe that the appellant was committing or had committed a felony. If the officer, on the basis of such other information, did have a state of mind consisting of such belief, it would then be the duty of the court to determine whether the state of facts known to the officer, and which brought about that state of mind, satisfied the objective standard of reasonable or probable cause which has been set forth hereinabove in the quotation from *People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]. ▄▄▄ There is nothing in the record to support any contention that the trial court failed to perform its duty, which is stated in *People* v. *Boyles,* 45 Cal.2d 652, at page 656 [290 P.2d 535], as follows: "Since the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based."

▄▄▄ Finally, the appellant challenges the sufficiency of the evidence to sustain the conviction. He expresses his contention in the following words: "It is readily apparent that the testimony of the appellant and codefendant as to how narcotics got into the pants pocket of the appellant without the knowledge and awareness that the appellant had it in his possession was corroborated by the officer's testimony in that the officers themselves told the appellant, 'we know it does not belong to you; we know it belongs to "Chello," ' the codefendant."

Such contention is without merit. The information which the officers had was such as to lead them to believe that Mrs. Ramirez was the prime actor in the narcotic activities at the

premises. The trial court could reasonably infer that the officers believed that the appellant was aiding and abetting her in her activities (see *People* v. *Hood, supra,* 150 Cal.App. 2d 197, 201-202; *People* v. *Hickman,* 143 Cal.App.2d 79, 81-82 [299 P.2d 389]), and, inasmuch as the capsules of heroin had been taken from the appellant's pocket, desired more clearly to connect Mrs. Ramirez with the possession of the narcotics which they had uncovered. Their efforts were successful. There may, of course, be joint possession of narcotics found on the person of one of the defendants. (*People* v. *Basco,* 121 Cal.App.2d 794, 796 [264 P.2d 88].) As said in the case just cited, at page 796: "A person may be so closely interested in and connected with the unlawful possession of narcotics by another as to furnish support for a finding that there was a joint possession."

As to the appellant, the requisite knowledge of the presence of the articles in his pocket and of the nature thereof as narcotics were matters which could properly and sufficiently be established by circumstantial evidence. (*People* v. *Miller,* 176 Cal.App.2d 571, 577 [1 Cal.Rptr. 656].) As stated in *People* v. *Martinez,* 169 Cal.App.2d 242, at page 245 [336 P.2d 988]: "The undisputed fact that the narcotics were found in the pocket of appellant's robe justified the inference that appellant had knowledge of their presence despite his protestations of innocence."

What the appellant is really seeking is to have this court reweigh the evidence. This we cannot do under well-established principles relating to appellate review. (*People* v. *Carnavacci, supra,* 119 Cal.App.2d 14, 16.) The determination of the trier of fact in this case finds substantial support in the record. We can find no error.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.