[Crim. No. 9386. First Dist., Div. One. Apr. 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLETON WARREN TENNEY, Defendant and Appellant.

**COUNSEL**

James H. Wolpman and Romines, Wolpman, Tooby, Eichner, Sorensen, Constantinides & Cohen for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Richard N. Light, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Following the denial of his motion to suppress evidence made pursuant to Penal Code section 1538.5, defendant entered a plea of guilty to violation of Health and Safety Code section 11530 reserving his right to appeal from the denial of the motion as provided in Penal Code section 1538.5, subdivision (m). Imposition of sentence was suspended and defendant was placed on probation for the period of three years on condition that he serve six months in the county jail. Defendant appeals from the order denying his motion to suppress pursuant to Penal Code section 1538.5 and from the order admitting him to probation.[1]

On January 24, 1970, Officer Denny Roberts of the Menlo Park Police

---

[1]No appeal lies from an order denying a motion to suppress evidence made pursuant to Penal Code section 1538.5. (Pen. Code, § 1237.) However, a defendant may seek review of the validity of a search or seizure on appeal from a conviction in a criminal case, notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty, if the defendant at some stage of the proceedings prior to conviction has moved for the return of the property or the suppression of the evidence. (Pen. Code, § 1538.5, subd. (m); *Thompson* v. *Superior Court*, 262 Cal.App.2d 98, 106-107 [68 Cal.Rptr. 530].)

Department obtained the issuance of a search warrant to search the persons of Jonathan Weidman, Robert Garrett "and other unidentified persons" and the premises at 206 Santa Margarita Avenue in Menlo Park. At about 9:15 p.m. on that day Roberts, eight other police officers and a police matron, went to the premises to execute the warrant. Two of the officers were dressed in standard police uniforms, i.e., dark blue trousers, a light blue worsted shirt with a metal badge on it, and a gun belt at the waist. Three of the officers were wearing a new Menlo Park police uniform consisting of black or green slacks, a green blazer with a white cloth patch on the left breast pocket, and a shirt and black tie. The remaining officers were dressed in plain clothes. All of the officers were armed.

The officers entered the premises, searched the house, and found marijuana in every room of the house except the bathroom and the dining area, in quantities ranging from small amounts up to two bricks. Approximately one-half hour after the police entered the premises, defendant came to the front door of the house. The evidence is in dispute over whether the door was closed but unlocked or slightly ajar, but, in any event, defendant opened it, looked inside for a few seconds, turned around and ran from the premises. He was pursued by Roberts and two other officers, and after running about 10 to 15 feet, stopped upon command of one of the officers. Roberts identified himself as a police officer and placed defendant under arrest for "suspicion of visiting a house where narcotics were used, sold and distributed." Defendant was then taken back into the house and searched. This search produced the marijuana which forms the basis of the instant charge.

At the time defendant arrived at the premises and looked inside the police were in the process of searching the occupants, whom they had lined up facing the wall in the dining area with their hands outstretched. This area was visible from the front door. Some of the officers had removed their coats, thus making the police insignia invisible and their holstered weapons visible. None of the officers' guns were out of their holsters. One of the officers in standard police garb was standing in the middle of the dining area. None of the officers identified themselves to defendant as policemen, but Roberts testified that one of the officers "hollered halt."

Defendant testified that as he looked into the premises he saw people lined up against the wall and men who were armed and had tattoos on their arms. At that moment Weidman (one of the persons named in the search warrant) stated to him, "I'm sorry you had to walk in on this" and one of the armed men said, "Come right in." He stated it was then that he ran.

Defendant admitted in his testimony to having seen marijuana in the house on more than one occasion in the past and that he had marijuana in

his pocket when he was arrested and searched. He testified that he was not a resident of the premises and that on the night of the subject incident he had gone there to visit Robin Russ, a young lady who lived there. Within the past two months he had visited the house 10 to 20 times. When queried as to why he hadn't knocked before opening the door he stated that it was not customary to knock at the entrance door but to just walk in. In response to the query why he ran from the premises, defendant stated it was an instinctive reaction prompted by his fright at seeing men with guns and tattoos.

Roberts testified that police surveillance disclosed that a very large number of persons came to the subject premises and that many of them entered without knocking. He stated that at the time he arrested defendant he did not believe defendant to be a resident of the premises. When asked to explain the basis for defendant's detention and arrest Roberts explained: "I felt that his actions in opening the door, without knocking, of a house where narcotics were used, obviously used, and then his actions in running immediately from the scene were a little bit suspicious."

Defendant contends that the warrant under which he was arrested was too broad to be constitutionally and statutorily valid because it referred to "unidentified persons." He asserts, further, that if this phrase is interpreted to mean "unidentified residents" it is too narrow to cover him since he was neither a resident nor were the police justified in believing he was. The People contend that the subject phrase means "unidentified residents" in the context of the warrant and the supporting affidavit. In this connection we observe that the affidavit asks for a search of "Jonathan Weidman and Robert Garrett and unidentified residents" and on four occasions refers to "unidentified residents." The warrant, however, commands a search of Weidman, Garrett and "other unidentified persons."

The lower court interpreted the phrase in question to mean "unidentified residents." In making such an interpretation the trial court was passing upon a question of law since it was dealing with whether the warrant was void and irregular on its face because it did not sufficiently describe the persons to be searched. (See *Aday* v. *Superior Court,* 55 Cal.2d 789, 795-797 [13 Cal.Rptr. 415, 362 P.2d 47]; *People* v. *Govea,* 235 Cal.App.2d 285, 297 [45 Cal.Rptr. 253]; *Dunn* v. *Municipal Court,* 220 Cal.App.2d 858, 869 [34 Cal.Rptr. 251]; *Saunders* v. *Municipal Court,* 240 Cal.App.2d 563, 565 [49 Cal.Rptr. 763].) Under well-established principles we are not, of course, bound by the trial court's interpretation. (See *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].)

■ The constitutional mandate is that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend. (binding on the states by *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684]); Cal. Const., art. I, § 19.) The mandate is also to be found in section 1525 of the Penal Code which provides that the warrant cannot be issued but upon probable cause supported by an affidavit naming or describing the person, and particularly describing the property and place to be searched. (See *People* v. *Keener,* 55 Cal.2d 714, 719 [12 Cal.Rptr. 859, 361 P.2d 587] [overruled on other grounds in *People* v. *Butler,* 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]]; *Saunders* v. *Municipal Court, supra,* 240 Cal.App.2d 563, 565.)

No California cases have been found dealing with the particularity with which a warrant must describe persons. We therefore must draw an analogy from the cases which have dealt with the particularity by which premises and property must be described in search warrants.[2] Accordingly, the requirement of particularity is met when the person is described with "reasonable particularity." (*People* v. *Walker,* 250 Cal.App.2d 214, 220 [58 Cal.Rptr. 495]; *Dunn* v. *Municipal Court, supra,* 220 Cal.App.2d 858, 868; *Atlas Finance Corp.* v. *Kenny,* 68 Cal.App.2d 504, 514 [157 P.2d 401].) ■ The question confronting us, then, is whether the phrase "unidentified persons" describes with reasonable particularity the persons to be searched. We have concluded that it does not.

In *Stern* v. *Superior Court,* 76 Cal.App.2d 772, 784 [174 P.2d 34], it was held that the description "other evidence" in an affidavit and search warrant for the purpose of searching a safe-deposit box could not include the sum of $50,000 found in the box.[3] In *People* v. *Mayen,* 188 Cal. 237, 242 [205 P. 435, 24 A.L.R. 1383], the supporting affidavit referred to the property to be seized as " 'personal goods and property, to-wit, certain paraphernalia' " and the warrant contained no description other than " 'certain personal property used as a means of committing a

---

[2]Although it could be argued that because Penal Code section 1525 does not state that persons are to be *particularly* described, but only that property shall be so described, any attempt to set a lower standard of *particularity* for persons would fail under the Fourth Amendment of the United States Constitution and article I, section 19 of the California Constitution, since they require the particular description of persons as well as property and premises.

[3]The affidavit asked for, and the warrant commanded, that the box would be searched for "Certain articles, records and property which were used as a means of committing said offense [violation of Pen. Code, § 274]; . . . to wit: . . . day books, diaries . . . or other evidence . . . ." (At p. 783.)

public offense, to-wit, attempted grand larceny.' " The court held the warrant invalid under article I, section 19 of the California Constitution, and Penal Code sections 1525, 1528, and 1529.

In the light of *Stern* and *Mayen* it appears that in the present case the designation "unidentified person" is too broad. The phrase would allow an unlimited search of persons and thus impregnates the warrant with the infirmity present in a "general warrant," an infirmity that has long been condemned. (See *Aday* v. *Superior Court, supra,* 55 Cal.2d 789, 796; *People* v. *Berger,* 44 Cal.2d 459, 461 [282 P.2d 509].) Since the phrase in question does not describe the person to be seized with sufficient particularity to meet the constitutional and statutory requirements it is invalid on its face.

We do not believe that the recent case of *Tidwell* v. *Superior Court,* 17 Cal.App.3d 780 [95 Cal.Rptr. 213], requires that we reach a different conclusion. In *Tidwell* the search warrant described the premises to be searched as "1360 Laurel Avenue, Redding, California." The premises searched, however, were located at 1860 Laurel Avenue in Redding. The evidence disclosed that there was only one Laurel Avenue in Redding; that it was one block long and that all addresses in the block were in the 1800's. The reviewing court upheld the search stating " 'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' [Citations.] A mistaken address does not invalidate a warrant per se. [Citations.]" (At p. 787.)

*Tidwell* is not inconsistent with *Stern* and *Mayen* because there were clearly limiting factors within the parameters of the portion of the warrant attacked which would allow an officer to ascertain and identify the place intended with reasonable effort. Within the designation "1360 Laurel Avenue" there were limitations as to the street which was only one block long. There were no numbers in the 1300's, all the numbers being in the 1800's. Since the last number was even, that limited the search to one side of the block, and since the last two digits, i.e., "60," were correct, the house itself would be identifiable. There would only be one "1860" on the block. In the instant case the phrase "unidentified persons" does not contain within its parameters any limiting factors that give it particularity either in a general or specific situation.

Assuming, arguendo, that the phrase in question could be interpreted to mean "unidentified residents" in the context of the warrant and the affidavit in support of it, it would still fail. Defendant was not a resident of the premises. Not only did defendant testify that he was not a resident

of the premises, but Roberts stated that at the time he arrested defendant he did not believe him to be a resident thereof.

The People are apparently relying on the rule that if police in the course of a valid search of contraband discover items which, although not described in the warrant, are *reasonably identifiable* as such, they may be seized. (*People* v. *Superior Court,* 17 Cal.App.3d 447, 451 [95 Cal.Rptr. 114].) The reasoning of the People in the light of this rule appears to be that if "residents" could be searched as persons particularly described, they may search a person who turns up if the police reasonably believe him to be a resident, even though in fact he not be one. *Such reasonable belief is predicated upon the fact that defendant approached the residence at 9:30 p.m., opened the door without knocking, started in and then fled.* Since the police knew that contraband was in the house, the People argue that an inference is reasonable that a resident would be more likely to take flight than would a casual visitor who is not responsible for the contraband.

It is difficult to reconcile this reasoning with the only evidence adduced on this issue. The evidence discloses that defendant was not in fact a resident and the only direct evidence going to the issue of reasonableness belies an inference thereof since the only police testimony on this issue was that the police did not believe defendant to be a resident at the time he was arrested. Whether such a belief was reasonable will also be discussed below in connection with our discussion of the existence of probable cause for an arrest since the issues are essentially the same.

Since defendant's arrest could not be predicated on the invalid search warrant, the question presented is whether, under the totality of the circumstances, there was probable or reasonable cause to arrest defendant. ■ If such probable cause existed, then the police officers, as an incident to such arrest, could properly search the person of defendant. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Ingle,* 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Webb,* 66 Cal.2d 107, 111-112 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Rodriquez,* 274 Cal.App.2d 770, 775 [79 Cal.Rptr. 240].)

■ An arrest without a warrant can be made if the person arrested has committed a public offense in the presence of the arresting officer or if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836; *People* v. *Privett,* 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602]; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535]; *People* v. *Webb, supra,* 66 Cal.2d 107, 111-112; *People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Machel,* 234 Cal.App.2d 37, 47 [44 Cal.Rptr. 126]; *People* v.

*Rodriquez, supra,* 274 Cal.App.2d 770, 755.) ■ "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citations.] The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made. [Citations.]" (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; see also *People* v. *Ingle, supra,* 53 Cal.2d 407, 412-413; *People* v. *Hogan, supra; People* v. *Privett, supra.*)

In the instant case the People do not contend that defendant committed a public offense in the presence of the arresting officers. They contend, however, that the police officers had reasonable or probable cause to believe that defendant had committed a felony pertaining to the furnishing or possession of narcotics. They assert the existence of two bases upon which such cause may be predicated: (1) police officers may arrest and search a person who appears as something more than a mere casual visitor to premises where the officers knew or have reason to believe narcotics activity is occurring (citing *People* v. *Valdez,* 260 Cal.App.2d 895, 900 [67 Cal.Rptr. 583]; *People* v. *Ramirez,* 185 Cal.App.2d 301, 306 [8 Cal. Rptr. 184]; *People* v. *Soto,* 144 Cal.App.2d 294, 301 [301 P.2d 45]; and *Pierson* v. *Superior Court,* 8 Cal.App.3d 510, 521 [87 Cal.Rptr. 433]), and (2) officers may arrest and search a person where they have observed deliberate furtive conduct by the person under circumstances that reasonably connect him to some known or reasonably suspected criminal activity. (Citing *People* v. *Superior Court,* 3 Cal.3d 807, 818-819 [91 Cal.Rptr. 729, 478 P.2d 449]; *People* v. *Gardner,* 177 Cal.App.2d 43 [1 Cal.Rptr. 830]; and *People* v. *Jiminez,* 143 Cal.App.2d 671 [300 P.2d 68].)

■ Adverting to the People's first alleged basis for the existence of probable cause, we first observe that many cases have held that the mere presence of a person on the premises where the officers have reason to believe there are narcotics will not justify either his arrest or the search of his person. (*Pierson* v. *Superior Court, supra,* 8 Cal.App.3d 510, 521; *People* v. *Valdez, supra,* 260 Cal.App.2d 895, 900; *People* v. *Ramirez, supra,* 185 Cal.App.2d 301, 306; *People* v. *Boyd,* 173 Cal.App.2d 537, 539 [343 P.2d 283].) However, the presence of additional factors indicating that there is more than mere presence or association involved, may supply probable cause. (*Pierson* v. *Superior Court, supra; People* v. *Valdez, supra; People* v. *Ramirez, supra; People* v. *Boyd, supra; People* v. *Soto, supra,* 144 Cal.App.2d 294, 300.) In determining whether such additional factors exist, each case must be decided on its own facts and circumstances

and on the total atmosphere of the case. (*People* v. *Ingle, supra*, 53 Cal.2d 407, 412; *Pierson* v. *Superior Court, supra*.)

In the instant case the additional factors relied on by the People to supply probable cause are defendant's arrival at 9:15 or 9:30 at night at a house where narcotics had been found, his opening of the door without knocking and his flight. The fact that defendant arrived at 9:15 or 9:30 at night in and of itself does not establish that he was a resident of the premises or something more than a mere visitor. (See *People* v. *Schraier*, 141 Cal.App.2d 600, 603 [297 P.2d 81] [visit occurred at 10 p.m.].) This was a likely hour for visitors and the police surveillance showed that many persons visited the premises between 7 and 12 p.m. No significance may be attached, moreover, to the time of arrival at a house where drugs were found in the absence of a showing of a nexus between the time of day and narcotic use or sale.

Adverting to defendant's opening of the door without knocking, we apprehend that the issue is the reasonableness of the police in believing that one who entered the premises without knocking was more than a mere visitor and not defendant's explanation for entering without knocking.[4] The evidence discloses that the police had surveilled the premises for approximately 13 hours over a 4-day period, both during the daylight and evening hours. They observed about 32 people enter the house during that time, 20 of whom entered between 7 and 12 p.m. Only five or six of these persons were observed to knock. Although the record is barren as to whether the remaining visitors knocked, it is reasonable to assume that they did not since the police surveillance report specifically mentioned those who did knock. Accordingly, it appears that the police knew that most of those who entered did not knock. Therefore, although a belief might reasonably be entertained that a person opening a door and entering without knocking is more than a visitor, such a belief, standing alone, appears to be unreasonable in this case in view of the knowledge by the police of the incidence of a large number of people who entered the premises without knocking.

Adverting to the factor of defendant's flight from the premises, the People assert that such flight is indicative that defendant was more than a casual visitor. They argue that a mere casual visitor would not be likely to flee because he would have no reason for doing so. They reason, therefore, that since defendant fled he must have had some reason for doing so

---

[4]We observe that although there was a conflict as to whether the door was closed but unlocked or slightly ajar, we must accept the former as true since the trial court found in favor of the People.

and that such reason was more likely, than not, his knowledge of the narcotic activity on the premises. This circumstance, the People contend, was a reasonable indication to the police that he was more than a casual visitor.

The People's contention is sustainable because there is evidence from which the trier of fact could conclude that upon opening the door defendant knew that the police were there. Although it is true that some of the officers had removed their coats, thus making the police insignia invisible, one of the police officers, dressed in standard police garb, was standing in the middle of the room where he was clearly visible. The officers who had removed their coats wore holsters which were clearly visible. The guns had not been removed from the holsters. It is a matter of common knowledge that police wear gun holsters. Moreover, one of the police officers shouted "halt." Such a command is commonly used by the police in addressing suspects who flee or are about to flee. From all of these circumstances the trial judge was justified in concluding that defendant knew that the persons who were searching the occupants of the premises were police officers.

Defendant, when queried as to the reason he ran, stated that he was frightened at seeing men with guns and tattoos. Although this statement is susceptible of the inference that he was frightened because he believed these men were robbers, it is equally susceptible of the inference that he was frightened because the men were police officers. Defendant did not state that he did not believe the men with guns were police officers. We here point out that robbers are not likely to perpetrate a robbery with guns in their holsters. In any event, any conflicts in the testimony, as well as the inferences to be drawn therefrom, were matters for resolution by the trier of fact.

We therefore conclude that the trial court was justified in determining that defendant's flight constituted an additional factor indicating that defendant was more than a casual visitor, particularly when such flight is considered together with the circumstance that defendant opened the door to the premises without knocking. ■ Accordingly, the trial court was justified in concluding that these factors supplied the police with probable cause for believing that defendant had come to the premises for the purpose of committing a felony pertaining to the furnishing or possession of narcotics. ■ We here observe that a proceeding under Penal Code section 1538.5 is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact (*People* v. *Heard,* 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374]; *People* v. *Superior Court,* 3 Cal.App.3d 476, 488

[83 Cal.Rptr. 771]), and the function of the reviewing court is to determine whether there was substantial evidence to support the trial court's findings (*People* v. *Superior Court*, 9 Cal.App.3d 203, 209 [88 Cal.Rptr. 21]; *People* v. *Superior Court, supra,* 3 Cal.App.3d at p. 488).

Apropos the furtive gesture theory predicated on the circumstance of defendant's flight, we apprehend that the law requires more than a mere "furtive gesture" to constitute probable cause to search or arrest. (*People* v. *Superior Court, supra,* 3 Cal.3d 807, 818; *People* v. *Tyler,* 193 Cal.App.2d 728, 732 [14 Cal.Rptr. 610]; *Sibron* v. *New York,* 392 U.S. 40, 66-67 [20 L.Ed.2d 917, 936-937, 88 S.Ct. 1889].) However, flight at the approach of law officers is a "strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime," is a proper factor to be considered in the decision to make an arrest. (*Sibron* v. *New York, supra; People* v. *Superior Court, supra,* 3 Cal.3d at p. 818.) That knowledge may be derived from information and observation. (*People* v. *Superior Court, supra.*) With respect to observation, this faculty embraces the taking notice of suspicious circumstances other than the furtive gesture alone. (*People* v. *Superior Court, supra; People* v. *Tyler, supra; People* v. *One 1958 Chevrolet Impala,* 219 Cal.App.2d 18, 20 [33 Cal.Rptr. 64].)

In the instant case at the time of defendant's flight the police had knowledge of the presence of contraband in the premises at 206 Santa Margarita Avenue and they had placed several persons therein under arrest for its possession. The arrival of defendant at the premises and his opening of the door without knocking, and his failure to respond to the command "halt," were suspicious circumstances. In the light of these factors the gesture of defendant in looking into the premises, observing what was occurring therein, turning around and running from the premises, could reasonably be given a guilty connotation. We think that from the officers' knowledge of the presence of the contraband and defendant's entry in the premises without knocking, the officers could reasonably draw the inference that defendant was fleeing because he was connected in some manner with the presence of the contraband.

We conclude, therefore, that the trial court was justified in determining that there was probable cause for defendant's arrest. Accordingly, since his arrest was proper the search incident to such arrest was likewise valid. (*People* v. *Webb, supra,* 66 Cal.2d 107, 124-126; *Cooper* v. *California,* 386 U.S. 58, 61 [17 L.Ed.2d 730, 733, 87 S.Ct. 788]; *Chimel* v. *California,* 395 U.S. 752, 764, fn. 9 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034].)

The appeal from the order denying defendant's motion to suppress evi-

dence pursuant to Penal Code section 1538.5 is dismissed. The order granting probation is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied May 15, 1972, and appellant's petition for a hearing by the Supreme Court was denied June 15, 1972. Peters, J., was of the opinion that the petition should be granted.